## Wyomissing Borough Annexation

*Russell Conwell Cooney, Ethan Allen Doty, Mancill, Cooney, Ott & Semans, David Sharman, Jr.,* and *William E. Sharman,* for appellants.

*H. Franklin Brossman,* for Borough of Wyomissing.

*Body, Muth, Rhoda & Stoudt,* for respondent and intervenor.

HESS, J., January 6, 1950.—On November 9, 1948, a petition was presented to the Council of the Borough of Wyomissing by residents and freeholders of Spring Township requesting that council annex to the borough a portion of Spring Township immediately north of and

adjacent to the present boundaries of Wyomissing. At a regular monthly meeting on January 11, 1949, the borough council by unanimous vote adopted an ordinance, purporting to annex the area in question, and thereafter caused to be filed in the office of the Clerk of Quarter Sessions of Berks County a certified copy of the ordinance, a plot and description of the boundaries of the borough before and after annexation. Within the time provided by law appeals were filed by Spring Township, the School District of Spring Township, and Harvey M. Hoffert, a freeholder and resident of the area annexed. The freeholders who petitioned the borough council to take steps to annex the territory then sought and were granted leave to intervene in this proceeding.

Voluminous testimony was recorded and numerous exhibits were admitted at the various hearings at all of which the writer of this opinion presided, and thereafter the issues were ably argued by counsel for the parties before the full court. The questions raised concern the legality of the proceedings as carried out and the propriety of the annexation. The proceedings were initiated under authority of the Borough Code of May 4, 1927, P. L. 519, as revised and amended by the Borough Code of July 10, 1947, P. L. 1621, 53 PS §12461, et seq. As last amended in 1947, sections 425 and 426 provide:

"Section 425. Annexation; Ordinance; Limitation of Subsequent Proceedings.—Any borough may, by ordinance, annex adjacent land situate in a township of the second class in the same or any adjoining county, upon petition. The petition shall be signed by a majority in number of all of the freeholders of the territory to be annexed. If an ordinance to make such annexation is defeated, no other proceeding for the annexation of the same territory, or any part thereof, shall be had within five years thereof.

"Section 426. Procedure.—A certified copy of any ordinance, adopted together with a description, and a plot showing the courses and distances of the boundaries of the borough before and after such proposed annexation, shall be filed in the court of quarter sessions of the county, or, in case the land proposed to be annexed is situate in an adjacent county, then in the courts of both counties. A notice of such filing shall also be filed in the office of the county board of elections of the proper county. Thereupon the territory proposed to be annexed shall be a part of the borough; except when any ordinance and plot are filed in the office of the clerk of the court of quarter sessions within two months of any general, municipal, or primary election, in which case the property proposed to be annexed shall not become a part of the borough until the day succeeding such election."

The territory annexed covers an area of approximately 1,000 acres of which roughly 200 acres comprise the village of Berkshire Heights and industrial properties, and the remainder is largely farm land, unsettled areas, and an industrial or borough dumping ground. Spring Township is a progressive township with certain well developed areas and presently has approximately 4,000 persons on the taxable rolls. Assessable real estate in the year 1948 totaled $3,527,-970.00 for the township. The school district is a district of the third class and the present school facilities are highly commendable. The assessable value of real estate for school tax purposes in 1948 was $4,817,554. The assessed valuation of real estate in the annexed area is approximately $871,150. Wyomissing is a progressive borough which is well governed and offers more than the usual borough advantages to its residents in the form of recreational facilities, governmental services, library facilities and other services. For the most part it is a residential community, but to the north it

has a prominent industrial area. This industrial area and the tracks of the main line of the Reading Company railroad separate the territory presently included in the borough from the annexed area.

In considering the questions raised by the parties we will discuss them in two categories: (1) The legality of the proceedings in relation to the Borough Code, supra, and (2) propriety of the annexation. The legality or validity of the proceedings is resolved into three principal attacks by appellants: (a) The ordinance; (b) the plot plan; (c) the description of the borough before and after annexation.

## Legality

(a) *The ordinance.* In Irwin Borough Annexation Case (No. 1), 165 Pa. Superior Ct. 119, 125, Judge Reno succinctly sets forth the modus operandi of the annexation procedure: "The ordinance is the legislative act by which annexation is effected; the description is the verbal delineation of the boundaries; the plot is the graphic representation of the description; both must be correct and correspond with each other. The office of the description and plot is to furnish means whereby the annexed land and the boundaries of the borough can be identified. Minor discrepancies may be disregarded (citing cases), but the description and the plot must together definitely fix the boundaries with reasonable certainty."

The ordinance which is the keystone of this annexation proceeding was adopted as is required by law, and apparently the only objection raised concerning it is that the ordinance does not contain a description of the area to be annexed by courses and distances and that the territory could not be plotted from the description contained in the ordinance. Appellants apparently concede that the description included in the ordinance conforms exactly to the description contained in the

petition presented to borough council and the issue that loomed so prominently in Irwin Borough Annexation Case (No. 1), supra, is not before us. A careful reading of sections 425 and 426 of the Borough Code, supra, does not appear to require a description in the ordinance by courses and distances. In fact, the language of section 426 would seem to negate such requirement: "A certified copy of any ordinance, adopted together with a description, and a plot showing the courses and distances of the boundaries of the borough before and after such proposed annexation . . ." are required to be filed in the office of the clerk of quarter sessions. The placing of a comma after "ordinance" and before "adopted together with a description", would reasonably permit a construction that the ordinance should be adopted with a description and not that a separate description be filed with the plan.[1] A description that reasonably distinguishes and designates the area proposed to be adopted would appear to be all that the foregoing section requires under any reasonable construction. The requirement for "courses and distances" refers at the most to the plot and to the description if section 426 be construed to require the filing of a separate description.

As we read the description in the ordinance, however, courses and distances are stated although no bearings are mentioned. The description begins at an ascertainable point and continues along certain lines

---

[1] The Borough Code prior to the amendment of 1947 provided that, "A certified copy of the ordinance, together with a description, and a plot showing the courses and distances . . .": Act of May 4, 1927, P. L. 519, §426. The language of the prior act would certainly appear to require the filing of a description with the plot, but the punctuation of the latest act would seem to obviate that requirement. It is well settled, however, that since punctuation marks are inserted by a clerk after enactment of legislation punctuation "shall not control or affect the intention of the legislature in the enactment thereof": Act of May 28, 1937, P. L. 1019, sec. 53; Commonwealth v. Bienkowski, 137 Pa. Superior Ct. 474.

for designated distances to definite calls or monuments and concludes by returning to the place of beginning. The ordinance and the description included in it should be sufficient to apprise, with reasonable certainty, any persons interested in the matter just what territory the borough proposes to annex. We find that the ordinance now being considered complies with that requirement. It is not contended that the description is at variance with the plot and description that were filed with it in this proceeding, but rather that the description in the ordinance does not include "courses and distances". ". . . the description and the plot must together definitely fix the boundaries with reasonable certainty": Irwin Borough Anexation Case (No. 1), supra, p. 125. We are of the opinion that the objection here raised is not well taken. "The ordinance having been adopted by council, a legislative body, was presumptively legal, and the burden of proving illegality passed to those who averred illegality": Mountainville Election District's Annexation, 304 Pa. 559, 562. As we see the problem raised by appellants they have failed to show any statutory noncompliance insofar as the ordinance is concerned.

(b) *The plot plan.* Along with a certified copy of the ordinance there was filed in the office of the Clerk of Quarter Sessions of Berks County a plot plan showing the area of the borough before and after annexation. Attached to the plot plan with paper clips were typewritten papers, one called "Description before Annexation" and the other, "Description after Annexation". Each description contained detailed courses, distances and bearings and also contained reference numbers which referred to corresponding numbers used to designate and identify the various lines of the plot plan. The area included before annexation is outlined on the plan in "red" and the area annexed is outlined in "yellow".

Appellants contend that the requirement for showing courses and distances applies both to the plot and to the description filed in the proceeding and that the description and plot filed herein do not comply with the law. Construing section 426, supra, in either of the two ways we previously suggested, we cannot adopt appellants' contention. It is true that courses and distances are not set forth in words on the plan and that the various lines thereon are described by numbers. These numbers, however, are included in the description which also sets forth courses and distances. By reference to the description the courses and distances numbered on the plot are shown, and by reference to the plot the word picture portrayed by the description is represented in graphic form. It is not necessary that each individually contain all the information necessary to fix boundaries of the borough, "but the description and the plot *must together* definitely fix the boundaries with reasonable certainty": Irwin Borough Annexation Case (No. 1), supra, p. 125. (Italics supplied.) We conclude that the method adopted by respondents in preparing the description and plot and designating courses and distances on each of them complies with the statutory requirement of section 426, supra.[2] Setting forth courses and distances in word form on the plan might easily have produced considerable confusion and difficulty in reading the plan because of the large number of courses and distances required and the diffi-

---

[2] Previous to the Borough Code of 1947, section 203 relative to incorporation of boroughs provided that:

"The application shall set forth the title of the proposed borough, with a particular description of the boundaries thereof, exhibiting the courses and distances in words at length, and be accompanied with a plot of the same."

In the Borough Code of 1947 "in words at length" is taken out of the section, an indication that the legislature in adopting the new code considered some of the technical requirements under the old code as unnecessary.

culty in describing them in full upon the plan because of the limitation of space.

Appellants point out one error in the plot and one error in the description as further reasons sufficient to warrant the court in finding that the description and plot do not comply with the requirements of law. In the description there is a line (32) shown as being "N 61° 28′ E, 415.62 feet to a point" whereas the plan indicates that the general direction taken by this line is South, not North. Obviously, an error was made in the description and all the expert witnesses called by opposing parties so agreed in their testimony and had no difficulty in adopting the correct bearing. On the description line (71) is described as "Continuing along same S 59° 11′ E, a distance of 100.67 feet to a point", while on the plot there is no number (71). Appellants do not argue that the errors mentioned are substantial. They contend that the court should rely upon these errors as a sufficient reason to declare the description and plot invalid. The errors, even though minor in nature, should not have been made, but we cannot conclude that they are of sufficient moment to warrant the court to invalidate the annexation when even the expert witnesses for appellants apparently attached little significance to them, and we cannot find that because of the errors the boundaries of the borough are rendered uncertain. Minor discrepancies when of no material consequence may be disregarded: Mountainville Election District, supra; Irwin Borough Annexation Case (No. 1), supra.[3]

(c) *The description of the borough before and after annexation.* Appellants contend that from the exhibits and testimony in the record the court should find that

----

[3] On the plot, line (70) is the last number mentioned, but the lines are definitely continued to the place of beginning. The reference number (71) referring to the bearing and distance set forth in number (71) on the description has been omitted.

the boundary lines of the borough before and after annexation do not close by a considerable distance. Considerable testimony was taken on this proposition, appellants calling three expert witnesses and respondents six. Appellants' principal witness on this point is E. Kurtz Wells, a registered engineer and surveyor. He made no survey and did not go upon the land or make any measurements on the land, but relied upon mathematical calculations he prepared from the description and plot filed in this proceeding. He prepared a traverse sheet, and from his calculations testified that the lines of the borough do not close to a considerable degree. Appellants' other witnesses testified that they examined and checked Mr. Wells' traverse sheet and arrived at similar conclusions. Mr. Wells also prepared a plan of Wyomissing before and after annexation and including as well considerable adjacent territory. The plan was offered in evidence by appellants and admitted as exhibit no. 4. An inspection of this exhibit indicates that the territory of Wyomissing before annexation, represented by parallel diagonal lines drawn through the area, is shown as closing, and also indicates that the area annexed, bounded by lines drawn in orange, is also represented as closing. This exhibit would suggest that in point of fact the boundaries of the borough before and after annexation do close.[4]

Respondents' witnesses testified that by reference to the calls and fixed monuments mentioned in the description there is no uncertainty as to the boundaries and that the lines do close. The title officers of two title companies, one of whom is also a registered engineer, testified that their companies would insure titles within the area in question in relation to accuracy of description of the borough before and after annexation. One

---

[4] Mr. Wells also indicated on an aerial picture including most of the area annexed marked boundary lines for the portion of the annexed area appearing on the picture, exhibit no. 5.

of them, Mr. Frankhauser, also testified that after having examined the plan and description he could locate the boundaries of the borough and that they are certain to fixed calls and monuments.

The variation in testimony of the witnesses called by the two sides is apparently produced because appellants' witnesses strictly followed bearings, courses and distances mentioned in the description while respondents' gave greater weight and importance to fixed calls and monuments designated in the description. In this respect bearings, distances and even quantities of land must give way to definite calls and fixed monuments: Myer v. Curry et al., 291 Pa. 145; Pleasant Hills Borough Incorporation Case, 161 Pa. Superior Ct. 259. In the latter case at p. 263, Judge Hirt states:

"It is a familiar principle also that where land is described by courses and distances and also by permanent monuments on the ground, the courses and distances must give way to the monuments . (Citing cases) The point of beginning of the description in this case is as definite as though fixed by monument (Citing cases) and the 'southerly property line of W. Brown being also the northerly property line now or late of S. Arch' just as definitely fixes the southern terminal of the course. The course begins at a call and ends at a call, both ascertainable on the ground. The engineer who prepared the description computed the distance along this course without measuring it, as '2,450 feet more or less'. The law does not insist that measurements be made upon the ground. Calls for adjoiners make definite the distances between them however indefinitely stated in the description."

After carefully studying the conflicting testimony of the various witnesses we have no hesitation in finding that when proper consideration and weight is given to the definite calls and fixed monuments designated in the description and set forth on the plan there is no

uncertainty concerning the boundary lines of the Borough of Wyomissing before and after annexation, and that in point of fact the lines do close. The testimony before us and the facts confronting the trial court in Irwin Borough Anexation Case (No. 1), supra, are quite at variance. In the case cited, the borough produced no countervailing expert witnesses to rebut the testimony of appellants' witness, and the appellate court at p. 128 stated, in reference to the testimony of appellants' expert: "It raised a serious and substantial question as to the accuracy of the description, and cast upon the borough the duty of coming forward with explanatory testimony." In the case now before us respondents have in our opinion met that burden to our complete satisfaction.

### Propriety of Annexation

In considering the propriety of the annexation we will divide the problem into four parts: (a) Boundaries; (b) financial burden upon Spring Township; (c) financial burden upon School District of Spring Township; (d) effect of annexation upon the people of the area annexed.

(a) *Boundaries.* Appellants cite the pronouncement of this court in In re Annexation to Borough of Wyomissing Hills, 39 Berks 130, as indicative of the court's disapproval of further annexations of land in Spring Township so that the township might not be thwarted in its desire to attain the status of a first class township. The Second Class Township Code of July 10, 1947, P. L. 1481, has, of course, largely nullified what we said there by affording to second class townships most of the advantages which previously were delegated alone to first class townships. Furthermore, the court in each case should ascertain whether the annexation is proper under the record established in that particular case without permitting personal sentiments to influence that judgment.

The boundaries of the annexed area for the most part are natural boundaries, including the lines of existing boroughs, center line of a highway, middle of a creek and middle of a river. There are no "islands" created which will continue to remain in the township. The southern boundary of the annexed area is a railroad line which previously was the northern boundary of the borough. It is argued that the presence of this very railroad line bisecting the borough as it exists after annexation with only two crossings in the length of the railroad included within the borough is a reason to find the annexation improper. No witnesses, as we recollect the testimony, testified that the presence of only two crossings is detrimental to the welfare of the borough although one witness testified that the railroad is a natural boundary for the borough as it existed before annexation. In this respect we understand that our inquiry concerns whether the boundaries as adopted are natural and proper boundaries and not necessarily whether other natural lines might conceivably have been adopted or were in existance prior to annexation.

The area annexed consists of approximately 200 acres comprising the Village of Berkshire Heights and industrial properties, and roughly 800 acres consisting of farm land, unsettled areas and industrial or borough dump land. It is contended that the large proportion of unsettled lands is improper. Less than 40 acres of the total of 800 are owned by persons who did not sign the petition for annexation, and one owner of 16 acres of farm land actually opposed the annexation. We cannot find that the inclusion of a large proportion of unsettled land is improper when the owners of approximately 95 percent of the unsettled lands do not oppose and have actually petitioned for annexation.

(b) *Financial burden upon Spring Township.* Presently the township receives from a 10-mill tax on real

estate approximately $35,279, of which $8,715 results from tax on land in the annexed area. A further reduction of approximately $782 will result from loss of occupation taxes and $742 from decreased State appropriation for highway purposes, a total of $10,239. The township witnesses were somewhat vague as to what the savings would be, but did estimate that only $3,490 was spent in 1948 for all purposes in the area. If that be true, the residents of the area may have just cause to complain because only about one third of tax money and other money received from the area is actually allocated for expenditures in the territory. We are of the opinion, however, that the figures given by the witnesses do not reflect sufficient credit for the cost of the services actually rendered to the inhabitants of the annexed area and that the actual cost would more closely approximate the tax revenue.

The township has no bonded indebtedness, but at the end of 1948 had some unpaid bills and a bank loan which it expected to pay off in 1949. When the 1948 financial statement is viewed in the light of expenditures incurred for nonrecurring items such as building a garage, $9,258; purchase of shovel, $7,500; purchase of road maintainer, $4,239; and unpaid bills, it would appear that in excess of $20,000 of expenditures for 1948 were for nonrecurring items. This total is close to 40 percent of the entire township expenditure in 1948. Unfortunately, no testimony of receipts and expenditures for prior years was offered so we cannot compare the 1948 financial picture with the situation in other years. On the testimony in the record, we cannot find that the annexation will place an unreasonable financial burden upon the township. Certainly it will result in a loss of revenue, but it would appear that after deducting the unusually large amount of nonrecurring items of expenditures made in 1948 the town-

ship will be able to continue its present operations and services without increasing taxes. The facts before us are vastly different from the facts appearing in North Braddock Borough's Annexation Case, 126 Pa. Superior Ct. 53, where the court found that the large reduction in taxes from the annexed area would require "either a large increase in the annual tax rate or a sharp curtailment in the servicing of township roads": p. 63, supra.

(c) *Financial burden upon School District of Spring Township.* Respondents contend that the effect of annexation upon the School District of Spring Township need not enter into the question of propriety for the reason that the School Code as variously amended, the last amendment being the Act of May 11, 1949, places upon the State Council of Education the duty of determining whether the portion of the township annexed shall continue as a part of the Spring Township School District or become a part of the Wyomissing School District.[5] Conceding that the State Council of Education may have the ultimate authority to determine changes in the territories of the districts concerned, we are of the opinion that the court must also pass upon the question of propriety insofar as the school district is concerned. The administrative body may ultimately determine that the annexed area shall remain in the Spring Township district even though the annexation be approved by the court, but whatever responsibility may finally rest upon that body, the court in the first instance must consider and decide the question of propriety as it relates to the school district as well as to the township and to the people living in the area.

Spring Township School District is doing a commendable job in educating the children of the township

---

[5] See Irwin Borough Annexation Case (No. 2), 165 Pa. Superior Ct. 134.

and of some adjacent boroughs which are now included in the district or are sending their children to schools of the district. It is estimated that the loss in tax revenue from the annexed territory will approximate $22,240, according to one of appellants' witnesses, and $21,729, according to another of their witnesses. The latter witness in his testimony listed savings to the district that would be effected by annexation totaling $16,422.88 and did not include in that figure savings which would be brought about through decreased transportation costs of pupils to the schools, books, supplies, insurance, repairs and other costs incidental to running a school system. Were these figures included, the saving would certainly be considerably higher and perhaps would approximate the loss in tax revenue. It would appear that for the school year 1947-48 the total expenditures of the district were $220,000, of which amount $102,000 was contributed by the State in the form of appropriations. How much the State appropriations would be after annexation we cannot calculate from the record. Appellants contend that annexation would increase the average daily attendance cost to the district by at least $6.18 per pupil, but their witnesses admit that part of this increased cost would be made up by State appropriations and they cannot or do not give that figure.

Annexation would also bring about a decrease in the borrowing capacity of the district. At present the borrowing capacity approximates $350,000, and at the close of the present fiscal year the total bonded indebtedness will be less than half that amount. Of course, if the annexed area is no longer a part of the district, the borrowing capacity will be reduced somewhat. On the other hand, a division of the district will require an allocating of present indebtedness and a proportionate part will by law fall upon the district acquiring the area. On the record before us, we cannot find that the

School District of Spring Township will suffer any appreciable financial loss sufficient to warrant the court to find the annexation improper.

It is not contended that the facilities available for the children will be rendered inferior if the number is decreased, and we can well assume that the high standards and excellent educational facilities of the district will continue. Some of the appellants' witnesses dealt at length upon the policy of recent legislation and of the State Department of Education to favor larger districts as against smaller districts. If that be a fact, it is something that may be considered by the State Council of Education and not by this court. Were we inclined to enter into such consideration, the witnesses have not given facts to warrant any conclusion on our part and they testified merely to vague generalities. There is also testimony that Wyomissing schools do not offer some of the technical and agricultural courses offered by the Spring Township district. Under the testimony, however, it is not definitely established that any children from the area are enrolled in these courses and certainly no parents, students or residents of the area raised any objection in this connection.

(d) *Effect of annexation upon the people of the area annexed.* Annexation is not desired by all the residents within the area concerned. Some of the people opposing it appeared at the hearing and testified along with a number of those favoring annexation. The witnesses who testified that they opposed having the territory become part of Wyomissing stated they were satisfied with existing services and conditions in the township. Several of them were employes of the township or school district or a member of the family of such employe. One witness very evidently was not acquainted with the loss of tax revenue resulting to the township because she estimated that the loss of tax revenue might approximate $1,000,000, a really fantastic estimate. The

persons who testified in favor of annexation, for the most part, stated they desired more adequate police protection, garbage and ash removal, sewers, and other services now being rendered by the borough to its residents.

Apparently some of the residents of the annexed area do not desire or need the additional or more complete services rendered by the borough, while a majority are extremely anxious to receive such services. What financial obligation will result to the people in both groups if annexation is approved and thereafter the services are secured cannot be estimated with reasonable certainty from the record. The present tax rates of both municipalities are mentioned in the record, but one of the most important variables which must be ascertained in estimating comparative taxes is the rate of assessment prevailing in the particular communities concerned. Few, if any, local assessors in Berks County assess real estate for tax purposes at any figure near actual market value, and most of them rely upon some percentage of market value in fixing assessments. Such conclusion on our part has been demonstrated many times in the numerous assessment appeals which regularly come before the court so that we are justified in taking judicial notice of the actual situation. We can safely conclude, however, that property owners in the annexed territory will pay higher taxes because it is obviously true that increased municipal services cost money and the money, of course, must come from the taxpayers. Such additional cost is, no doubt, the prime reason why the dissenters do not desire to become part of the borough, but that fact alone does not warrant the court in disregarding the will of the majority of the freeholders.

"It (the court) will not arbitrarily or capriciously thwart the will of the freeholders and the borough. On

the other hand, it does not faithfully perform the inescapable duty cast upon it by the legislature if it blindly accepts the judgment of the council whose action it is commanded to *review*. It must exercise its independent judgment upon the evidence and the questions raised by it": Irwin Borough Annexation Case (No. 1), supra, pp. 132-133.

### Conclusion

We conclude that on the record before us appellants have failed to demonstrate that the proceedings instituted by the Council of the Borough of Wyomissing to annex a portion of Spring Township are illegal. The ordinance as adopted and as represented by the certified copy filed in the office of the Clerk of Quarter Sessions of Berks County, along with a description and a plot, meet the requirements of law. The description and the plot describe the boundaries of the borough before and after annexation with reasonable certainty and "furnish means whereby the annexed land and the boundaries of the borough can be identified": Irwin Borough Annexation Case (No. 1), supra, p. 125. We are fully satisfied that the boundaries before and after annexation close and that any alleged nonclosure stressed by appellants' witnesses is the result of mathematical calculations and, in fact, does not exist when proper weight and consideration is given to fixed calls and monuments set forth in the description. As we previously pointed out, such closure is demonstrated by appellants' own evidence, exhibit 4, prepared by their principal witness.

Likewise, we cannot find that annexation will be improper. The residents of Berkshire Heights and of the adjacent territory will benefit materially from the municipal services that will be received by them. It is true that both Spring Township and the school district

of the township will suffer some loss in tax revenue, but not to such degree that an undue financial hardship will be placed upon the remaining taxpayers of the township. The language of the Superior Court in Pleasant Hills Borough Incorporation Case, supra, pp. 264-65, is in point in this respect:

"Certainly the loss of more than one-half of its tax revenue is a matter of concern to the township but it will not be in worse position than it would have been if it had assumed the financial burden of providing adequately for the needs of the community here involved. In any view, the disadvantages to the township supply no good reason for denying the right of incorporation as a borough to residents seeking to attain an efficient local self-government suitable to their needs. The law never intended to protect a township in maintaining its boundaries intact at the expense of a town within its borders."

What was there said about incorporation of a community into a borough applies with no lesser force to a community which seeks to become a part of a borough which has demonstrated through many years that it can give to its residents the very best of municipal services.

In discussing the objections raised by appellants, we have referred principally to the appeals filed in behalf of Spring Township and of the School District of Spring Township. The appeal filed by Harvey M. Hoffert is, however, in the same category and what has already been said by us is likewise applicable to Mr. Hoffert's appeal. The testimony offered and the briefs and oral argument of counsel were understood to apply to the three appeals, and the court in similar fashion has considered the questions raised in the three appeals as being the same in fact and in law.

And now, to wit, January 6, 1950, the appeals of

Spring Township, School District of Spring Township and Harvey M. Hoffert are dismissed at the cost of appellants.