Pennsylvania Power & Light Company, Appellant,
*v.* Shenandoah Borough.

Argued April 14, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Arthur H. Hull,* with him *George H. Hafer, Hull, Leiby & Metzger, P. H. Burke, J. W. P. Burke, Thomas B. Noonan, Cletus C. Kilker, Thomas J. Perkins, E. G. Hauff* and *Charles J. Green,* for appellant.

*Martin V. McGuire,* with him *James J. Gallagher* and *Daniel J. Boyle,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 23. 1949:

Judged by any reasonable standard of speed in the administration of justice the record of this litigation leaves much to be desired. The action was started in 1940,—a suit in assumpsit to recover the balance due for electric light and power furnished by the Pennsylvania Power & Light Company to the Borough of Shenandoah from March 1, 1933, to November 30, 1940. Although there is nothing to indicate that the facts were particularly complicated there have been two trials, one lasting from May 18 to June 5, 1942, the other from May 19 to June 11, 1947, and yet the determination of the principal issues involved is no further advanced now than it was at the beginning. It may be added that because of defendant's insistence to that effect the printed record on this appeal consists of 545 pages whereas it is safe to say that a small fraction of that number would have been amply sufficient to present the only question we are called upon to consider.

Most of the items for which plaintiff is seeking recovery are based upon written contracts entered into between the parties, but neither trial progressed to a point where evidence could be introduced to establish that the light and power had been furnished in accordance with plaintiff's claim; this was because the entire controversy raged around the validity of the contracts depending on whether there had been any informalities in the manner of their execution and whether certain alleged legal requirements had been observed, such as the filing of performance bonds, approval by the Public Service Commission, proper advertising, and competition in bidding. In response to a veritable flood of objections raised by defendant's counsel to the admission of these contracts and other documents in connection therewith the court ruled that they were all inadmissible, with the result that although plaintiff's claim was for $110,976.61

with interest the jury at each trial were allowed to render a verdict for plaintiff in the amount of only $12,844.58 and interest. On each occasion plaintiff moved for a new trial on the ground that the court had erred in refusing to admit the contracts in evidence, but each time the court, instead of deciding whether or not it had committed such error, granted a new trial because it thought that there was not enough evidence in the record to show whether the Borough of Shenandoah was subject to the General Borough Acts of May 14, 1915, P. L. 312, and May 4, 1927, P. L. 519, and that, until that question could be determined, it could not be known whether the validity of the contracts was dependent upon compliance with the provisions of those statutes. What the court apparently had in mind was that those Acts applied by their terms only to boroughs incorporated under general law and to those incorporated under special law which had accepted the provisions of the general law or been given by the act of incorporation the general powers of boroughs incorporated under the general law; therefore the court thought it necessary to ascertain whether the Borough of Shenandoah had been incorporated under general law or under some special act without ever coming within the provisions of the General Borough Acts.

Assuming that the question which thus concerned the court was one that had to be preliminarily decided, the evidence on that subject presented by plaintiff was quite sufficient to establish that the Borough of Shenandoah had been incorporated under general law. The Act of April 1, 1834, P. L. 163, for the incorporation of boroughs, vested the power to effect such incorporation in the several Courts of Quarter Sessions within the Commonwealth, by and with the concurrence of the grand jury of the county. It provided that application was to be made to the court in writing, signed by a majority of the freeholders, setting forth the name, style and title of the

proposed borough with a description of the boundaries thereof; this application was then to be laid before the grand jury and if a majority of that body should conclude that it was expedient to grant the prayer of the petitioners the same was to be certified to the court, which certificate was to be entered of record, and then, at the succeeding term of the court, the judgment of the grand jury might be confirmed; if the court's decree was "in conformity with the prayer of the petitioners" the petition and decree were to be recorded in the Recorder's office of the county, and "from thenceforth the said town or village shall be deemed an incorporated borough". The Act of April 3, 1851, P. L. 320, likewise provided that the several Courts of Quarter Sessions within the Commonwealth should have the power to incorporate boroughs, but contained no provisions as to procedure; that Act and the Act of 1834 are *in pari materia* and to be construed as one enactment: *McFate's Appeal,* 105 Pa. 323, 326.

The Borough Solicitor stated at the trial that the charter of the Borough of Shenandoah had, to his knowledge, been missing for many years and he did not believe the Borough had a copy of it. Accordingly plaintiff introduced in evidence the Miscellaneous Record Book of the Recorder of Deeds of the County of Schuylkill, setting forth the petition of a majority of the freeholders requesting that the town of Shenandoah be incorporated by the style and title of the Borough of Shenandoah according to the boundaries there set forth; there followed a recital of the proceedings before the grand jury of the Court of Quarter Sessions of the county and the certification of that body that they found that the conditions prescribed by the Act relating to the incorporation of boroughs had been complied with and that they believed it was expedient to grant the prayer of the petitioners; the court entered its approval, which, together with the petition and the grand jury's certi-

fication, was promptly recorded in the office of the Recorder. This took place in 1866, and, since the Act of 1834 provided that from the time of such recording "the said town or village shall be deemed an incorporated borough", it is perfectly clear * that Shenandoah has been an incorporated borough for the last 80 years and that it was incorporated, not under a special act (no such act appears in the books) but under the general laws of 1834 and 1851. Therefore the Borough at the time it made the earlier contracts was unquestionably subject to the General Borough Act of 1915, and at the time it made the later ones to the General Borough Act of 1927.

Because plaintiff was twice denied recovery on the major portion of its claim it was forced each time to move for a new trial and each time its motion was granted. It is now in the anomalous position, therefore, of appealing from an order made at its own request, and under such circumstances the only action that can be taken by this Court is to dismiss the appeal.

Appeal dismissed.

---

* In *McFate's Appeal*, 105 Pa. 323, it appeared that the clerk of the Court of Quarter Sessions was unable to find any record in his office of the original incorporation of the Borough of Cochranton in Crawford County. We said in that case (pp. 327, 328): "By the terms of the statute the incorporation takes effect from the date of the recording of the petition and decree in the recorder's office. Hence that record is evidence, and it is the only evidence that can be adduced when the records of the court are lost. . . . Strong presumptions are allowed in favor of records irregularly kept, after a great lapse of time. It is presumed, under such circumstances, that courts did what the law required them to do, and that omissions were the result of carelessness or ignorance on the part of the clerks: . . . all the citizens of the borough during said time acted as if the decree were valid, and now it is well 'to presume that what has been done was done of right and not of wrong'."