Irwin Borough Annexation Case (No. 1).

Argued April 19, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*Elder W. Marshall,* with him *Carroll Caruthers* and *Louis E. Sensenich,* for appellants.

*Robert W. Smith,* with him *Scott Fink, Smith, Best & Horn, Fink & Jennings,* and *Max M. Bergad,* for appellees.

OPINION BY RENO, J., July 15, 1949:

By an ordinance adopted on February 20, 1948 the Borough of Irwin annexed adjacent land in North Huntingdon Township. The township and its school district filed a complaint alleging that the ordinance was void for reasons stated. The court below, one judge dissenting, sustained the complaint, and declared the ordinance "illegal and void and the proposed annexation . . . illadvised and improper." The borough and the school district of the borough appealed.

Annexation to a borough of adjacent territory situate in a second class township upon the petition of freeholders to the council is regulated by The General Bor-

ough Act of May 4, 1927, P. L. 519, as revised and amended by The Borough Code of July 10, 1947, P. L. 1621, 53 PS §12221 et seq. It provides, so far as here pertinent, that a "borough may, by ordinance, annex adjacent land situate in a township of the second class . . ., upon petition. The petition shall be signed by a majority in number of all of the freeholders of the territory to be annexed." Id. §425,[1] 53 PS §12461. It requires: "A certified copy of any ordinance, adopted together with a description, and plot showing the courses and distances of the boundaries of the borough before and after such proposed annexation, shall be filed in the court of quarter sessions of the county . . . [and] Thereupon the territory proposed to be annexed shall be a part of the borough . . ." Id. §426, 53 PS §12462.

Provision is made for challenging an annexation ordinance by complaint filed in the court of quarter sessions, "and the determination and order of the court thereon shall be conclusive." The Code also provides: "In cases of ordinances effecting annexation of territory . . . the court shall have jurisdiction to review the propriety as well as the legality of the ordinance." Id. §1010, 53 PS §12900.

I. *Scope of Review.* Notwithstanding the provision in §1010, supra, declaring the determination of the court below conclusive, the case is here on a broad certiorari and, in addition to adjudicating the jurisdiction of the court below and the regularity of its proceedings, we examine the testimony which was made a part of the record by the Act of April 18, 1919, P. L. 72, 12 PS §1165. In *Re Appeal of Bender,* 106 Pa. Superior Ct. 376, 163 A. 47; *Warner Bros. Theatres, Inc., v. Pottstown Borough,* 164 Pa. Superior Ct. 91, 63 A. 2d 101.

However, we do not weigh the evidence, resolve its conflicts, or pass upon the credibility of the witnesses.

---

[1] The references are to section numbers of the Borough *Act* unless they have been changed by the later Borough *Code.*

The findings of fact by the court below will not be disturbed if our examination of the testimony shows that they are supported by competent evidence. *Walker's Appeal*, 294 Pa. 385, 144 A. 288; *Bangor Electric Company's Petition*, 295 Pa. 228, 145 A. 128; *Hand's Case*, 266 Pa. 277, 109 A. 692; *Union National Bank of Pittsburgh v. Crump*, 349 Pa. 339, 37 A. 2d 733; *Anderle Appeal*, 350 Pa. 589, 39 A. 2d 829; *Elkland Leather Workers' Assn., Inc.*, 330 Pa. 78, 198 A. 13.

The presumption is that the acts of public officers are regular, and the presumption attaches to annexation proceedings. *Mountainville Election District's Annexation*, 304 Pa. 559, 156 A. 162. But the presumption is only a procedural expedient, *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 A. 644, and its function is merely to establish a prima facie case of regularity which is overcome by proof to the contrary. *Beacom v. Robison*, 157 Pa. Superior Ct. 515, 43 A. 2d 640. But see *Hill v. Alexander*, 338 Pa. 26, 11 A. 2d 884; *Altoona City v. Bowman*, 171 Pa. 307, 33 A. 187; and comments, 9 Wigmore on Evidence, §2534.

II. *Automatic Dismissal of Complaint.* The complaint was originally called for a hearing before Judge MCWHERTER, who requested President Judge LAIRD to sit with him. They were unable to agree, and *no order was entered.* Appellants argue that "The divided opinion of the two judges who first heard the case left the annexation proceeding in full force and effect and automatically worked a dismissal of the complaint." This is based upon the familiar rule that a tie vote in a tribunal amounts to the refusal of the pending motion or to a dismissal of a complaint. See *Pa. Publications, Inc., v. P. U. C.*, 152 Pa. Superior Ct. 279, 32 A. 2d 40; *Summers v. Kramer*, 271 Pa. 189, 114 A. 525; *First Congressional District Election*, 295 Pa. 1, 144 A. 735.

The rule does not apply here. The two judges did not constitute the court en banc, or sit as the court en

banc. In Westmoreland County there are three judges in the quarter sessions court. The court en banc sits on days specifically fixed by its rules, and the hearing was not held on one of the designated days. The complaint raised a question relating to vital interests of the community, and the court en banc was the proper tribunal to consider and decide it. *Kensington Club Liquor License,* 164 Pa. Superior Ct. 401, 65 A. 2d 428, and cases therein cited. By order of President Judge LAIRD, after the two hearing judges had disagreed, the case was set down for argument before the court en banc, was heard by three judges, and the order from which this appeal was taken was entered by that court. Even if the two judges had sat en banc they would have been justified in calling the third judge to break their deadlock. *Summers v. Kramer,* supra.

Moreover, appellants never claimed in the court below that the complaint had been dismissed by the tie vote of the hearing judges. If that was their position they should have formally excepted to the order setting the case down for argument before the court en banc. In their brief they state that they protested at the argument before the court en banc and there argued that the earlier division of the judges resulted in a dismissal of the complaint. This is denied by appellees. Howbeit, appellants were represented by able and experienced counsel who knew how to place objections on the record for the scrutiny of an appellate court. Apart from the failure to raise the question below, there is no merit in the contention. The case called for action by the whole tribunal and was referred to and decided by it.[2]

III. *Map and Description.* The central controversy relates to the accuracy of the description of the annexed

---

[2] Appended to appellees' brief is a letter by President Judge LAIRD explaining the circumstances under which the case was referred to the court en banc. We have, however, based the decision only upon facts disclosed by the record.

land as contained in the ordinance and the accompanying plot. The ordinance is the legislative act by which annexation is effected; the description is the verbal delineation of the boundaries; the plot is the graphic representation of the description; both must be correct and correspond with each other. The office of the description and plot is to furnish means whereby the annexed land and the boundaries of the borough can be identified. Minor discrepancies may be disregarded, *Mountainville Election District's Annexation,* supra, but the description and the plot must together definitely fix the boundaries with reasonable certainty. *North Braddock Borough's Annexation Case,* 126 Pa. Superior Ct. 53, 190 A. 357. Appellants intimate that only the freeholders of the annexed territory are interested in a correct description. Residents and voters are also vitally concerned; assessing and taxing authorities, the courts and justices of the peace, county officials, and many State departments (e. g., Highways, Health, Public Instruction) require precise information of the exact boundaries of political subdivisions. Boundaries should be definitely settled at the beginning for many reasons, and not the least is the avoidance of expensive future litigation. See *North Braddock Borough's Boundary Case,* 126 Pa. Superior Ct. 25, 190 A. 350.

1. The court found, and appellants admit, that the map is not a correct representation of the description in the ordinance. The engineer drew a line described as "N. 42° 01' West 210 feet" on the map and no such course appears in the description. No explanation of this error was offered to the court below. Here it is characterized as "simply a mistake on the part of the draftsman", and appellants suggest that "in the interest of accuracy, a corrected plot should be filed from which the interpolated line has been deleted." Obviously mere deletion of the line will produce a gap of 210 feet in the boundaries, and the amended map would not show a

tract of land within closed boundaries. If the ordained description were correct, leave might be granted to file a map to accord with the description. But, as will be shown, the ordinance-description is also inaccurate and the line was interpolated precisely at the point where a draft of the ordained description discloses a break even greater than 210 feet. It is difficult to avoid the suspicion that the draftsman discovered that the description was so inaccurate that it could not be portrayed upon a map, and that he sought to cover the error by the interpolated line. At all events, appellants' admission destroys the presumption of regularity so far as concerns the map.

2. The court also found "that the description given in the ordinance . . . does not contain a complete or accurate description of the land sought to be annexed." This is the ultimate finding, based upon subsidiary findings that certain courses and distances do not call "for any particular location, but terminating in a point, which might be anywhere", that "the 18th and 19th courses . . . do not meet by a distance of more than 623 feet", that there is no "line or course necessary to close the description . . . and whether it should be a straight line or whether it should be a line of many parts on different bearings, we are unable to say and may not guess." These findings of fact, if supported by legally competent evidence, are binding upon us. *Eden Park Borough Incorporation,* 158 Pa. Superior Ct. 40, 43 A. 2d 529; *Pleasant Hills Borough Incorporation Case,* 161 Pa. Superior Ct. 259, 53 A. 2d 882; and the *North Braddock* cases, supra.

Some of the findings are derived from the learned court's study of the description, and with them we concur. The description contains 25 courses. The beginning point in the line of the borough is readily identifiable. The first fifteen courses are described by reference to streets and roads and the distances between points are definitely stated. Succeeding courses describe lines with

their bearings as extending so many feet "more or less, to a point". Were a monument mentioned the line would extend from one ascertained point to the monument, regardless of the distance, and "more or less" would be acceptable as an estimate. But where no monument is stated and the line runs from one point so many enumerated feet "more or less" to another point, the distance is perplexingly indefinite and the line may, as the court points out, terminate anywhere. The 16th course, "thence through lands of the Heirs of Michael Clohessy, deceased, South 35° 03' East, 1690 feet, more or less, to a point" is one of several glaring instances. Even appellants admit that the length of this line, "like the length of Course 15, is stated somewhat indefinitely", and in an ingenious and labored argument contend that the length of the course and its terminal point are "determinable, either by trigonometrical computation or by actual measurement on the ground." This indefinite line with its point in space remains a major difficulty.

The rest of the findings are based upon the testimony of John D. Bott, an engineer with 40 years' experience, whose qualifications have not been questioned. He made no survey or measurements upon the ground. Instead he prepared a plot or a drawing of the lines set out in the description. Proceeding clockwise, as the description directs, he drew the courses according to their bearings and distances, adopting the specified number of feet in the "more or less" courses. He encountered no formidable difficulty until he reached the point at the end of the 18th course where the borough engineer interpolated the course upon the map. There he discovered, just as had the borough engineer, that given their described bearings the 18th course would not meet the 19th course. Then, in order to locate definitely the position of the 19th course, starting again at the beginning point in the borough line, and apparently proceeding counter-

clockwise,[3] he projected in inverse order the last seven courses of the description and established the location and terminal point of that course. In this manner he found that the 18th and 19th courses would not join, and that the distance between their terminal points was 623.67 feet.

His conclusions are criticized because they are not based upon actual measurements on the ground. His testimony would have been more satisfactory and convincing had he made a survey. But it had at least this quality: It raised a serious and substantial question as to the accuracy of the description, and cast upon the borough the duty of coming forward with explanatory testimony.

There is no countervailing evidence of any kind. The borough engineer was not called as a witness. Judge McWHERTER requested the borough solicitor to call at his chambers and asked him to state "the manner in which the map . . . was prepared." The solicitor stated that the map was prepared by the borough engineer from data furnished by the solicitor. It consisted of a map of the borough prior to annexation and four plans of real estate developments in the annexed area, two of which had been recorded and two unrecorded. The solicitor prepared the description in his office. He did not state whether he based the description on the map, or whether the map was drawn from his description. The lot development plans were not introduced in evidence, and there is no proof that they were accurate or were based upon surveys.

Thus, it is established that the map and the ordinance-description were not based upon an actual survey. "The law does not insist that measurements be made upon the ground": *Pleasant Hills Borough Incorpora-*

---

[3] Appellants criticize this process; yet in their argument to support the 16th course they too resorted to a counter-clockwise procedure.

*tion,* 161 Pa. Superior Ct. 259, 263, 53 A. 2d 882. Neither does the law insist that a description unsupported by a survey, compiled by a lawyer solely from unauthenticated sources not in evidence, shall be impeachable only by measurements made on the ground. The court was compelled to choose between Bott's uncontradicted and positive testimony and the unsworn and vague information supplied by the solicitor, between an expert's graphic demonstration of error and the borough's description which admittedly its own engineer could not delineate on a map which would show closed boundaries. We cannot hold that in its search for verity the court erred in basing its findings upon Bott's convincing testimony. The borough chose to stand upon the presumption of regularity after it had been overcome, and, in the absence of evidence which the borough might have produced, there is no basis for a conclusion on our part that the findings are improper.

This case and *North Braddock Borough's Annexation Case,* supra, are strikingly similar in many respects. There the court below was also confronted by an interpolated line, a faulty and incorrect description of new boundaries, and a gap of 385 feet in the old boundaries, and it refused to sanction the annexation. This Court affirmed, and virtually adopted the impressive opinion of the quarter sessions court. Here the uncontradicted evidence discloses a break of 623 feet and this annexation must also be disapproved.

IV. *Descriptions in Petitions.* In view of the conclusion reached upon the preceding finding, the next one can be reviewed more briefly.

The court found that a majority of the freeholders in the annexed area had not signed valid petitions.

In the area there were 571 freeholders, and a majority is 286. Twenty petitions were circulated and presented to the borough council. One petition described no territory, bore only one signature, and was

rejected by the court. Another petition, bearing 21 signatures, was found upon sufficient evidence to have been altered after its presentation to council by the insertion of a description which it did not contain when signed. Eleven petitions, with 233 signatures, carry the same description contained in the ordinance. Three petitions, with 37 signatures, contain descriptions which deviate slightly from the ordained description. Four petitions, bearing 83 signatures, contain a description which the court found "will not close by 3000 feet and cannot be reconciled with the descriptions contained in" the eleven petitions referred to. Counting the eleven and the three petitions, only 270 freeholders, less than a majority, signed petitions that by any liberal standard of judgment could be allowed as acceptable, and even they carry the description that has been declared defective.

We have no difficulty in believing appellants' statement that the faulty petitions resulted from "a stenographer's mistake in copying the description." Nevertheless, the borough was engaging in an important and far-reaching project, which called for the exercise of extreme caution and care, and the errors in the descriptions could have been readily discovered by cursory checking and copy-reading. Even an indulgent court, with a will to minimize the magnitude of errors, cannot be expected to overlook easily avoidable inaccuracies.

It must be emphasized that when a borough annexes land it exercises a delegated sovereign power. It is an "extraordinary power", *Fister v. Kutztown Borough*, 49 Pa. Superior Ct. 483, 491, exercisable only upon petition and confined to the lands described therein, *Porter Township Annexation*, 75 Pa. Superior Ct. 543, 547, and a substantial difference between the description in the petition and the description in the ordinance will defeat the annexation. In *Re Annexation of a Portion of Ab-*

*ington Township to Borough of Jenkintown,* 101 Pa. Superior Ct. 227.

The foundation stones upon which this annexation project was erected were defective, and will not support the superstructure.

V. *Propriety of Annexation.* The court, pursuant to its authority "to review the propriety" of the annexation, pronounced it "ill-advised and improper."

The court's power to adjudicate the propriety of an annexation was introduced into the law by an amendment of May 18, 1933, P. L. 818, §1, to The General Borough Act of May 4, 1927, P. L. 519, 53 PS §12900. Its purpose was to lodge judicial discretion in the quarter sessions court in respect to annexations, somewhat analogous to the power exercised by it under the Act of April 1, 1834, P. L. 163 and April 3, 1851, P. L. 320. See *Penna. P. & L. Co. v. Shenandoah Borough,* 362 Pa. 43, 66 A. 2d 290. Under those and cognate acts the Supreme Court held that the soundness of the discretion exercised in approving borough incorporations and annexations was not subject to review. *Borough of Sewickley,* 36 Pa. 80; *Annexation to Borough of Camp Hill,* 142 Pa. 511, 21 A. 978. However, since the Act of April 18, 1919, P. L. 72, supra, under which the testimony becomes a part of the record and subject to review, the exercise of the discretion has been reviewable, *North Braddock Borough's Annexation Case,* supra, but the court will be reversed only upon a clear showing that its discretion has been abused.

On the question of propriety the court below stated: "We are somewhat apprehensive of the situation several years hence if this annexation proceeding is sustained. We are of opinion that this unfortunate controversy arose as an aftermath of the deplorable dispute between the School Boards of these two School Districts, which was only settled by the decree of the Supreme Court, [in Irwin Borough School Dist. v. North Huntingdon

Twsp. School Dist.] reported in 358 Pa. 78, [55 A. 2d 740,] and that by reason of the divorcement in that case and the subsequent property settlement, the assets of the Borough School District have become considerably increased. We fear, however, that such affluence is only temporary and that the taxpayers as well as petitioners for annexation may regret the hasty action. We fear too that the taxpayers of the Borough will rebel at being asked to pave the streets and lay sewers in the newly acquired section and furnish street lighting, police and fire protection in the new addition to the Borough."

Appellants refer to this and other reasons assigned by the court below as "contemplated woes, disappointments, objections and regrets [which] were purely fanciful and conjectural . . ." We have carefully read the record and we cannot concur with appellants' criticism. Naturally the court was looking to the future, but so were appellants' witnesses. They testified to the advantages which annexation would produce in the future, improved streets, better lighting service, greater fire and police protection, and the installation of a sewage system. If their testimony did not convince the court that their sanguine expectations would be reasonably realized the court cannot be charged with an abuse of discretion. Quite properly the court pointed out that the benefits sought by the petitioners, in the absence of evidence by appellants showing the borough's financial resources, could be secured only at the increased expense of the taxpayers, who conceivably might raise serious objections.

We cannot hold that a court charged with the duty of reviewing the propriety of an annexation cannot attempt to presage and appraise the future. It will not arbitrarily or capriciously thwart the will of the freeholders and the borough. On the other hand, it does not faithfully perform the inescapable duty cast upon it by the legislature if it blindly accepts the judgment of the

council whose action it is commanded *to review.* It must exercise its independent judgment upon the evidence and the questions raised by it. The quarter sessions courts have for two centuries been the repository of general supervisory and administrative power in relation to a large variety of local interests and affairs. They possess knowledge of local conditions which no appellate court can possibly know, and, in the absence of a *manifest* abuse of discretion, we must assume that they act upon reasons which have genuine relation to the local situation.

In this appeal appellants carry a heavy burden. They gain nothing by showing merely an error of judgment. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused": *Mielcuszny v. Rosol,* 317 Pa. 91, 93, 176 A. 236. "When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power": *Garrett's Est.,* 335 Pa. 287, 292, 6 A. 2d 858. Indeed, appellants did not attempt to demonstrate an abuse of discretion. They argued only that the matters referred to by the court are "committed to the judgment of borough authorities, and are not for the court in the absence of a showing that harm must inevitably result to the financial structure of the borough." We do not endorse that proposition. *The final judgment is committed to the court, and its judgment, when judicially founded and expressed, will prevail.* Ap-

pellants have not met the burden of showing a *manifest* abuse of discretion.

Appellees have asked us to declare that the evidence shows that the school district of the township will be seriously hampered by the annexation. They contend that the district will lose annual revenue of approximately $25,000, about one-seventh of its usual revenue, while its schools will lose only 105 students, approximately one-nineteenth of its total enrollment. This was a relevant factor in the exercise of the court's discretion. *North Braddock Borough's Annexation Case,* supra. The court below did not discuss this point, believing that the matter was confided solely to the State Council of Education. Since the question did not enter into the decision upon the propriety of the annexation, we shall not comment upon it.

Affirmed at appellants' costs.