Irwin Borough School District, Appellant, *v.* North Huntingdon Township School District.

Argued March 24, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ. Appeal, No. 63,

*Elder W. Marshall,* with him *Walter T. McGough* and *Louis E. Sensenich,* for appellant.

*Robert W. Smith,* with him *Smith, Best & Horn,* for appellee.

OPINION BY MR. JUSTICE JONES, May 27, 1953:

The basic legal question involved on this appeal is whether a court of quarter sessions has jurisdiction to impose liability upon one school district in favor of another for the tuition of pupils of the first district attending school in the latter during litigation over a municipal annexation ordinance which is the subject of a complaint in the court of quarter sessions.

On February 20, 1948, the borough of Irwin adopted an ordinance annexing to its corporate area adjacent land lying in the township of North Huntingdon. Both the township and the school district of the township at once challenged the annexation ordinance by filing a complaint in the court of quarter sessions of the county as authorized by Section 1010 of The General Borough Act of May 4, 1927, P. L. 519, as amended by The Borough Code of July 10, 1947, P. L. 1621, 53 PS §12900. The complaint was originally heard by the president judge and an additional law judge of the county who differed in their conclusions with respect to the validity of the ordinance. Each wrote an opinion both of which were filed on August 24, 1948, by the president judge who directed that the matter be heard on September 21st following by all four members of the court sitting en banc. On August 26th the board of directors of the borough school district, by resolution, advised the residents of the territory (which was the subject matter of

the borough's annexation ordinance) to register their children on September 1st for attendance at the borough schools during the succeeding school year. The next day, the township school district, by public notice, sought to advise residents of the territory that their children should continue to attend the township's schools until the question concerning the validity of the annexation ordinance was finally determined. Even so, 67 children of residents of the territory involved in the proposed annexation were registered on September 1st as pupils in the schools of the borough school district.

On January 7, 1949, the court of quarter sessions, composed of the four judges of the county, sitting en banc, entered a decree (one judge dissenting) adjudging the annexation ordinance to be illegal and void. Three days later (January 10th) upon ex parte representations of counsel for the borough school district, the court entered a supplementary amendment of the decree of January 7th which needs be quoted in full as it constitutes the basis of the present controversy:

"And now, to wit; this 10th day of January, 1949, it appearing to the Court that some children, resident in North Huntingdon Township, have been attending the public schools in the Borough of Irwin and some children, resident in the Borough of Irwin, have been attending public schools in North Huntingdon Township pending the decision of this Court in this matter; it further appearing that no definite arrangements have been made between the parents of the respective children and the Boards of School Directors of the Township and Borough as to the payment of tuition or the reimbursement of the respective school districts for the additional expense thus incurred by them, and it further appearing that the welfare of the respective students in the different schools requires that the children remain in the schools and in the classes or grades, which they have been attending since the opening of school year in

September, 1948, until the close of the school year 1948-1949. Now, therefore, after due and careful consideration, it is ordered, adjudged and decreed that the order and decree of this Court made or issued on January 7th, 1949, shall be supplemented and amended by adding thereto the following: that the children and students resident in North Huntingdon Township and the Borough of Irwin attending the public schools of the Township or Borough outside of the School District of their residence shall be permitted to remain in the class or grade, and attend the public schools of the respective school districts which they have been attending since the opening thereof in September, 1948, until the end of the current school year and that their tuition shall be paid by the School District of their residence providing the said children otherwise comply with the rules and regulations of the school in which they are enrolled; the expense of such tuition to be settled and adjusted between the districts at the end of the school year."

Both the borough and the borough school district appealed to the Superior Court from the decree of the court of quarter sessions of January 7, 1949, declaring the annexation ordinance invalid. The township school district filed exceptions to the January 10th amendment of the decree but did not appeal therefrom. The decree of January 7th and the amendment of January 10th were set forth in full in the printed record on the above-mentioned appeals to the Superior Court and attention was called to the amendment, as well as the decree of January 7th, by the appellants in their history of the case. On July 15, 1949, the Superior Court, in a unanimous opinion, affirmed the decree of January 7th: see *Irwin Borough Annexation case (No. 1)*, 165 Pa. Superior Ct. 119, 67 A. 2d 757. Thereafter, the borough school district, in reliance upon the provision contained in the January 10th amendment, billed the township school district from time to time for the tuition of the

67 township pupils who had attended the borough schools in the school year 1948-1949. The township school district refused to pay.

As a consequence, the borough school district filed a petition in the court of common pleas of the county on January 16, 1951, whereon the court granted a rule on the township school district to show cause why a judgment should not be entered against it in favor of the borough school district "in the sum of $8,662.95, with interest thereon from October 13, 1949, in accordance with said Decree of the Court of Quarter Sessions entered January 10, 1949. . . ." The township school district filed an answer in the nature of a demurrer raising questions of law, and argument was thereafter had on the petition and answer. On September 17, 1951, the court discharged the rule by an order to which the borough school district filed exceptions. After argument before the court en banc, the exceptions were dismissed (one judge again dissenting) in a final order from which the borough school district took this appeal.

In disposing of the petitioner's contentions, the learned court below held (1) that the court of quarter sessions did not have jurisdiction, in connection with the litigation over the annexation ordinance, to adjudicate liability on the part of the township school district for the tuition of the children of its residents attending school in the borough district during the litigation, (2) that the amendment of January 10, 1949, purporting to impose liability upon the township school district for the tuition of its children attending school in the borough school district was interlocutory at best and, consequently, did not render the amendment of January 10th res judicata upon the Superior Court's affirmance of the decree of January 7, 1949, and (3) that, even if the amendment of January 10, 1949, was competently made, a rule to show cause is not the proper procedure for a recovery upon the alleged liability.

The matter which the amendment of January 10th attempted to add to the decree of January 7th was so plainly beyond the jurisdiction of the court of quarter sessions as to merit little discussion. The fact that Section 1010 of The General Borough Act, supra, as amended, conferred upon the court jurisdiction of the complaint attacking the annexation ordinance imputed no power to such court to be concerned with or to pass upon affairs of a school district whether of the township or of the borough. The ordinance was an exercise by the borough of its municipal power and had nothing to do with public schools or their administration. It neither purported to, nor did it, involve the rights and liabilities of the school districts in any way. Such matters were entirely foreign to the quarter sessions proceeding concerning the ordinance and, hence, not within the jurisdiction of the court. In *Irwin Borough Annexation Case (No. 2)*, 165 Pa. Superior Ct. 134, 137-138, 67 A. 2d 765, it was pertinently recognized that "There are fundamental distinctions between boroughs and school districts. They are separate and independent legal entities; they operate in distinctive spheres of governmental power; and they are regulated by different codes of law. Boroughs are municipal corporations and are governed by The Borough Code. School districts are administrative bodies corporate and politic, and are governed by the School Code." Questions arising under the School Code are cognizable in courts of common pleas. "If the court has no jurisdiction, it is of no consequence that the proceedings have been formally conducted, for they are coram non judice. . . . A judgment rendered in the Court of Quarter Sessions in a proceeding exclusively within the jurisdiction of the Common Pleas, and vice versa, is void for want of jurisdiction in the court rendering the judgment": *Wall v. Wall*, 123 Pa. 545, 553, 16 A. 598. The amendment of January 10th was obviously a nullity.

The appellant contends, however, that, since the court of quarter sessions had jurisdiction of the complaint attacking the ordinance, it also had power to determine all other issues incidental to the case and reasonably necessary for the administration of justice. Ordinarily that is so, but it is subject to the important qualification that the "other issues" cognizable by the court must fall within its general jurisdiction. The opinion in *Commonwealth v. Brownmiller*, 141 Pa. Superior Ct. 107, 14 A. 2d 907, which the appellant cites in support of its contention in this connection, expressly so confirmed where it stated (p. 112), "[Courts] may do all things that are reasonably necessary for the adminstration of justice *within the scope of their jurisdiction*" (Emphasis supplied). For instance, a court of equity, the completeness of whose remedy is most frequently observed, could not assume to grant a divorce to an aggrieved wife who had invoked the court's competent jurisdiction to obtain an award of support from her husband because of his desertion of her. The remaining cases cited by the appellant in its effort to expand the jurisdiction of the court of quarter sessions afford no logical basis for its contention.

The appellant also argues that, since the decree of January 7th, as amended by the decree of January 10th, was before the Superior Court in *Irwin Borough Annexation Case (No. 1)*, supra, and, since that court affirmed the decree, the question of the lower court's jurisdiction to render any part of the decree is necessarily res judicata. Stated otherwise, the question of the court's jurisdiction cannot be raised again in a suit between the same parties or their privies concerning the same subject matter: *Federal Land Bank of Baltimore v. Putnam*, 350 Pa. 533, 537-538, 39 A. 2d 586. As a reading of the opinion in the *Annexation Case (No. 1)*, supra, discloses, the only matter there considered by the Superior Court was the validity of the annexation

ordinance and not the liability of one school district to another for tuition of pupils. Because the decree of January 7th and the amendment of January 10th were set forth on the appeals to the Superior Court, the appellant urges that a question as to the propriety of the January 10th amendment could have been raised and that, consequently, the whole matter is res judicata as the doctrine embraces not only matters actually determined but also those which could have been determined in the former case. This broad rule is applicable, however, where the causes of action are the same. Cf. *Philadelphia v. Ridge Ave. Ry Co.*, 142 Pa. 484, 493. The present proceeding was instituted for the recovery of the money liability sought to be imposed by the amendment of January 10th whereas the original proceeding was a complaint against the annexation ordinance. Where the causes of action are different, the doctrine of res judicata applies only to the matters actually determined in the former action between the parties. It is too clear for argument that the one thing passed upon by the Superior Court in *Annexation Case (No. 1)* was the invalidity of the ordinance. Furthermore, there was no duty upon the township school district to raise any question as to the competency of the amendment of January 10th, upon the borough school district's appeal which exclusively called into question the lower court's invalidation of the annexation ordinance by the decree of January 7th. It follows, therefore, that the Superior Court's affirmance of the decree of January 7th did not render res judicata the question as to the jurisdiction of the court of quarter sessions to amend that decree in the manner in which it attempted to do on January 10th.

Concluding, as we do, that the learned court below acted properly in discharging the appellant's rule for a summary judgment on the basis of the incompetent amendment of January 10th, it becomes unnecessary for

us to consider whether a rule to show cause issued out of the court of common pleas was an appropriate remedy for the recovery of the money claimed by the borough school district to be due it under the amendment of the decree of January 7th entered by the court of quarter sessions on January 10th.

Order affirmed at the appellant's costs.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It is the position of the School District of the Borough of Irwin in these proceedings that (1) since the Court of Quarter Sessions had the power to determine the legality of the annexation ordinance it necessarily had the authority also to hear and determine other issues arising out of and incidental to the original determination; (2) that the amended decree was not interlocutory but final and therefore appealable; (3) that with the failure of the North Huntingdon School District to appeal from the amended decree, the decision of the Superior Court affirming the lower court's action constituted an affirmance of the entire decree; and (4) that the rule to show cause was properly an original process.

The School District of the Township of North Huntingdon contends, on the contrary, that (1) the Court of Quarter Sessions was without authority to enter the amended decree as it was not vested with equitable powers; (2) that the supplemental decree ignored that provision of the School Code which provided there should be no change in the lines of a school district by annexation until the legality and correctness of such annexation had been finally adjudicated; (3) that the Borough School District improperly solicited the attendance of school children from another municipality and therefore lost whatever equities it may have origin-

ally had in the matter; (4) that the amendment of January 10, 1949, not having been submitted to the Superior Court for decision was not considered by that court; (4a) that, in spite of its terminology it is not supplemental or amendatory to the decree of January 7th because it dealt with an entirely different subject; (4b) that since the Court of Quarter Sessions had no jurisdiction to enter it the supplemental decree was void and of no effect and therefore required no attack in the appellate court; and (4c) that the amendment was interlocutory and unappealable because it merely contemplated a settlement between the school districts.

It will not be necessary to take up these contentions seriatim but I hope, by the termination of the exposition of my views, to have answered all the questions raised by them.

While it is true that the proposed annexation was not self-executing and that, in any event, it would not be effective until the beginning of the school year after the change had been permanently effected (*Irwin Borough Annexation Case (No. 2)*, 165 Superior Ct. 134), it is still the fact that 67 children residing in North Huntingdon Township did attend the Irwin schools in anticipation of the legalization of the projected annexation. Debate as we may about the impropriety and irregularity of this scholastic contretemps, a very pragmatic situation was presented to the Court which required immediate and effective action. And the Court did not fail in fulfilling the duty thrust upon it. With Solomonic detachment it realized that in every serious crisis, theories must yield in the face of facts. No one can dispute that, next to healthful food, raiment and shelter, nothing is more important to a child's welfare than education. The battle of the handbills and posters between the two municipalities had so intermingled the students of the school district that immediate court action was imperative to prevent the loss of school time

on the part of the involved children. These pupils were already embarked on their voyage of the school term. To have taken no action would have thrown them between Scylla and Charybdis, not knowing whether to attempt to reach the terminus of the academic year in the "foreign" school or to return to the home port of their own original school. Hence, the imperative need for an intervening force to restore order, safeguard educational continuity and provide for a fair and equitable settlement of the financial obligations arising out of the confused and tangled state of affairs.

In my opinion there is no doubt that the power to take the indicated action resided inherently in the court, firmly anchored as it was with specific statutory authority conferred upon it to review the legality and propriety of the annexation ordinance. (Act of May 18, 1933, P. L. 818, as amended 53 P.S. 12900.) In addition to this statutory authority, the courts under our Constitution—"have certain inherent rights and powers which do not depend solely upon express constitutional or legislative grants. They may do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction: 14 Am. Jur., Courts, §171. Judge MAXEY now Justice of the Supreme Court, recognized that rule when presiding in Lackawanna County in Re Surcharge of County Commissioners, 12 D. & C. 471." (*Commonwealth v. Brownmiller*, 141 Pa. Superior Ct. 107).

The Supreme Court of the United States affirmed this course of action in the case of *Peck v. Jenness*, 48 U.S. 612, when it said: "It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause."

In *Grime v. Department of Public Inst.*, 324 Pa. 371, we said: "Where a court has jurisdiction over the parties

and over the cause of action, it has full power to act in the premises."

Corpus Juris Secundum is quite specific on the subject: ". . . a grant of jurisdiction, in the absence of prohibitive legislation, implies the necessary and usual incidental powers essential to effectuate it, and subject to existing laws and constitutional provisions, every regularly constituted court has power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, and for the enforcement of its judgments and mandates. So demands, matters, or questions ancillary or incidental to, or growing out of, the main action, and coming within the above principles, may be taken cognizance of by the court and determined, since such jurisdiction is in aid of its authority over the principal matter, *even though the court may thus be called on to consider and decide matters which, as original causes of action, would not be within its cognizance.* When parties are once rightfully in court, the court has jurisdiction over them, and that jurisdiction continues, without further notice, as long as any steps can be rightfully taken in the cause." (21 C.J.S. *Courts,* Sec. 88) (Emphasis supplied)

The School District of North Huntingdon maintains that since the supplemental decree of January 10, 1949, merely envisaged a financial agreement between the two school districts awaiting an adjudication as to whether North Huntingdon was indebted to Irwin, the decree was therefore interlocutory and not appealable. But a judgment or decree is ripe for appeal when it precludes a party from further action in the Court entering the decision: "A decree to be final and appealable must preclude the complaining party from further action in the court making such decree: Keasbey's Trust Estate, 342 Pa. 439, 444. The decree of the court below directing distribution of the fund to depositors determined appel-

lant's rights in and to said fund. Failure to refer to appellant's putative right to trace the trust res . . . does not affect the finality of the decree." (*Washington Trust Co. Acct.*, 350 Pa. 363, 366)

The supplemental decree specified that such children as attended a school district outside their resident municipality would be permitted to continue in that school until the end of the then current term and that their tuition would "be paid by the school district of their residence." This arrangement answered the dictates of reason and satisfied the demands of fairness. It was not necessary to specify what the tuition amounted to since the calculating machinery was already provided for in the Public School Code (Act of July 5, 1947, P. L. 1266, sec. 7, re-enacted by Act of March 10, 1949, P. L. 30, sec. 2561, as amended 24 P.S. 25-2561.) This judicious fact-facing and face-saving supplemental decree, in effect, authorized the representatives of the combatting school districts to sit down at their Panmunjon table, strike a balance as to who owed whom, and retire with the honors of war.

The failure or disinclination of the North Huntingdon School District to appeal from the supplemental decree invested it with a finality as conclusive as though affirmed on appeal. In *Fleming v. Strayer*, 367 Pa. 284, we said: "When a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered and not reversed on appeal is, as between parties to the suit and their privies, final and conclusive with regard to every fact which might properly be considered in reaching a judicial determination and with regard to all points of law relating directly to the cause of action in litigation. . ."

And then, although the North Huntingdon School District did not appeal from the supplemental decree, *that* pronouncement nevertheless went to the Superior

Court as *part and parcel* of the case, since it was an integral segment of the adjudication which had declared **the** annexation ordinance invalid. In its completed **form** the decree provided, therefore, (1) for the invalidation of the annexation ordinance, and (2) that the children who had been buffetted about in the war of the school districts should remain in their respective classes and schools until the end of the term, with the home school districts paying for their respective tuitions.

When the Superior Court affirmed the action of the Court below it inevitably affirmed at the same time the amended decree which, by its very terms, was flesh and bone of the original decree: "Now, therefore, after due and careful consideration, it is ordered, adjudged and decreed that the order and decree of this Court made or issued on January 7, 1949, *shall be supplemented and amended by adding thereto the following:* . . ." (Italics supplied).

The question of divisability of affirmance was discussed by the Superior Court in the case of *Kay v. Gray,* 30 Pa. Superior Ct. 450, where there had been a per curiam opinion of the Supreme Court affirming the action of the lower court: " 'So far as we have been able to discover there is no ground whatever for the contention that the decision of the Supreme Court does not apply to that part of the decree relating to the validity of the mortgage. The decree was affirmed as an entirety, and as the case is now presented the question of the validity of the mortgage must be regarded as res judicata.' "

Litigation, as everyone knows whether he has been subjected to it or not, is an expensive undertaking and every effort is made or should be made to dispose of a legal controversy, no matter the number of its facets, in one all-embracing final adjudication. The courts are already inundated with cases awaiting final disposition.

Further and further interminable delays would be inevitable if issues were to be disposed of piecemeal rather than all-inclusively. When a litigant is dissatisfied with a decision an obligation devolves upon him to appeal the decision directly and not collaterally. In *Johnson & Co. v. Carver & Swift*, 175 Pa. 200, we admonished: "If the first decree was erroneous for want of statutory authority, why did plaintiffs not at once take advantage of the error by appeal?"

The appellees also complain that the appellants erred in using the rule to show cause as an original process, but our courts have often sanctioned this procedure when it is obvious that an expeditious, equitable and just result can be achieved thereby. In *Automobile Banking Corporation v. Weicht*, 160 Pa. Superior Ct. 422, the Superior Court said: "However, in the circumstances of this case, and since it will appear that instead of harming appellant it will actually aid him in attaining his objective, we have not experienced insurmountable difficulty in sanctioning the procedure followed here. The use of rules is a peculiar feature of our Pennsylvania jurisprudence, and grew out of the administration of equity through common law forms."

In *Delco Ice Manufacturing Co. v. Frick Co., Inc.*, 318 Pa. 337, the use of a rule to show cause as proper procedure for initiating a proceeding to strike off a conditional sales contract was approved by this Court: "In discussing rules to show cause, in Park Bros. & Co. v. Oil City Boiler Works, 204 Pa. 453, Justice MITCHELL says: 'The enlarged operation of rules is a somewhat peculiar and very admirable feature of Pennsylvania jurisprudence, growing largely out of the administration of equity through common law forms. It was early held that remedy by rules had supplanted the ancient audita querela and writ of error coram nobis, *and the constant tendency of modern practice has been to en-*

*large rather than to restrict their operation.'* " (Emphasis supplied)

The decision of the Majority leaves the litigation in this case in the midstream of indecision. What is now the scholastic status of the 67 North Huntingdon school children who studied in the Irwin schools? Will they receive credit for the year spent in a school not their own? Suppose the Irwin School District refuses to award credit to the "foreign" students because their tuition has not been paid? If North Huntingdon still refuses to pay for the tuition, what avenue is open to the Borough of Irwin to compel payment? Having endeavored but failed to get payment through the process of a rule to show cause, will Irwin be estopped now, on the principle of res adjudicata, from filing a suit in assumpsit?

These questions, I fear, will outfit further vessels of contention to sail the heavy seas of dubious litigation.

I dissent.