## South Pymatuning Township Appeal.

Argued September 26, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*George Hardy Rowley*, with him *Voorhies, Dilley, Keck & Rowley*, for appellant.

*George F. Mahaney*, for appellee.

OPINION BY MR. JUSTICE KEIM, November 28, 1962:

In this appeal, the supervisors of South Pymatuning Township, a second class township in Mercer County, are requesting this court to determine the propriety of an attempted annexation by the Borough of Clarksville also situate in Mercer County.

This annexation proceeding and the pending appeal arise under the Act of July 20, 1953, P.L. 550, 53 P.S. §67501 et seq.

It is interesting to note that Hickory Township is also interested in annexing a part of the area in question and that most of the Borough of Clarksville and a large part of the area to be annexed will be flooded by reason of the construction of the Shenango River Reservoir. This construction is a compelling factor on the Borough of Clarksville to increase its size since most of it will be inundated. The Borough of Clarksville consisting of approximately 167.4 acres (before flooding) is annexing a part of South Pymatuning Township consisting of 2,542.6 acres (before flooding). The annexed area will yield 1,447.6 acres of unflooded area. South Pymatuning Township before annexation and flooding consisted of 16,640 acres.

The procedural transition of this annexation is as follows: On December 22, 1960, a majority of the freeholders of the area to be annexed presented a petition to the Borough of Clarksville requesting annexation. This petition contained a general description which generally followed the property lines of the petitioners and the boundaries of the affected municipalities. At the time the petition was presented to council it contained a map which precisely described the annexed area by courses and distances. On the same date the Borough of Clarksville duly enacted Ordinance No. 69 annexing the land. The said ordinance contained a description which followed the courses and distances as set forth in the map.

On January 16, 1961 a certified copy of the ordinance, accompanied by the original petition and map, was filed in the Court of Quarter Sessions of Mercer County.

On February 9, 1961, the supervisors of South Pymatuning Township filed the following complaint: "AND NOW, February 9, 1961, pursuant to the Act of 1953, July 20, P. L. 550, South Pymatuning Township, by its Board of Supervisors, files this Complaint against Clarksville Borough Ordinance No. 69, Annexing to Said Borough a Portion of South Pymatuning Township, and, as a party aggrieved by said annexation, prays your Honorable Court to determine the legality of the proceeding and the propriety of the annexation as serving the public interests and, if satisfied with the same, to appoint a board of three commissioners to make a study of the facts in the matter."

The Court of Quarter Sessions of Mercer County held hearings, on October 13, 1961 and on October 23, 1961. On January 2, 1962 President Judge HERMAN M. RODGERS of the said court filed an opinion wherein he, ". . . ordered and decreed that the proceedings are in conformity with the law and that they are proper

as serving the public interests. The prayer for the appointment of a board of commissioners will be disposed of by the Court after consultation with counsel." The President Judge thereupon appointed three commissioners who filed their report on April 12, 1962 recommending the annexation.

On May 9, 1962, the Court of Quarter Sessions of Mercer County, by President Judge RODGERS, reaffirmed the propriety of the proceedings as being legally valid and as serving public interests. The annexation was ordered and decreed to become effective on May 16, 1962. This appeal was taken and a supersedeas order was issued on May 15, 1962 by the above mentioned President Judge.

The scope of review in appeals such as the one before this court was established by *Bell Appeal*, 396 Pa. 592 (1959), 152 A. 2d 731, and was capably condensed to fit our particular statutes by Justice BENJAMIN R. JONES in the case of *West Conshohocken Borough Appeal*, 405 Pa. 150, 160, 161 (1961), 173 A. 2d 461, wherein Justice JONES stated the following: "The 1953 statute does not provide for an appeal from the decision of the court of quarter sessions. Under such circumstances, our scope of review is on broad certiorari. Bell Appeal, 396 Pa. 592, 609, 610, 152 A. 2d 731, and cases therein cited. On broad certiorari, we 'look beyond jurisdiction of the court below and regularity of the proceedings to determine, by examining the testimony, whether the findings are supported by evidence or whether the court was guilty of an abuse of discretion in such connection or an error of law': Bell Appeal, supra (p. 611). *We do not, however, weigh the evidence or substitute our discretion for that of the court below.*" (Emphasis supplied)

The appellant attacks the legality of the annexation in two broad categories. First, the appellants' brief alleges that the annexation was illegal because "The

petition for annexation signed by the freeholders and the annexation ordinance adopted by the Borough of Clarksville do not describe the same land. In fact, the petition for annexation does not describe *any* enclosed land area." The second broad category alleges that the lower court erred in finding that the annexation was proper as being in the public interest.

The first broad objection relative to the discrepancies in the description is broken down by the appellants into three specific allegations. The first specific error, complained of by the appellants, is the discrepancy in the manner the two descriptions cross Route No. 18. The description in the petition is directed to the west side of Route No. 18 then proceeds to the southwest corner of lands of Koonce Estate, being northwest corner of lands of D. F. Moore. The description as contained in the annexation ordinance (and the map) is directed to the center line of Route No. 18 then to the next point which is apparently common to both descriptions. It therefore appears that the description in the ordinance (and map) contains a right triangle, situate on the west side of Route No. 18, which is not included in the petition-description. From the scale of the map we can approximate the width of Route No. 18 to be 40 feet. This would make the base of the right triangle 20 feet. The side of the triangle is indicated on the map and ordinance-description to be 19.85 feet (or approximately 20 feet), therefore the hypotenuse would be approximately 28.27 feet. The lower court disregarded this alleged discrepancy on the theory that the apparent contradiction is clearly resolved by the map attached to the petition. The rule which determines whether or not such an alleged discrepancy would invalidate the annexation is expressed in the *Salisbury Twp. Annexation Case*, 172 Pa. Superior Ct. 262, 94 A. 2d 143, wherein the Superior Court stated on page 268 of the official report and page 146 of the At-

lantic 2d reports: "Absolute accuracy is not mandatory, but the description and the plot must together definitely fix the boundaries with reasonable certainty. Dallas Borough Annexation Case, 169 Pa. Superior Ct. 129, 139, 82 A. 2d 676. Minor discrepancies may be disregarded. Irwin Borough Annexation Case (No. 1), supra, 165 Pa. Superior Ct. 119, 125, 67 A. 2d 757."

In view of the comparative size of the triangle and the annexation of 2642.6 acres, we feel that the discrepancy is minor and may be disregarded. The intent of the parties to include the triangle is obvious from the map and from the fact that the description in the petition generally followed the boundaries of the petitioners. To buttress this position we have the presumption that an ordinance having been adopted by a legislative body is presumably legal and the burden of proving illegality is upon those who aver illegality. *Mountainville Election District's Annexation*, 304 Pa. 559, 562, 156 Atl. 162 (1931). The appellants have not presented any evidence that it was not the intent of the parties to include the triangle as evidenced by the map and ordinance. None of the petitioners presented any objection to the annexation and apparently intended the annexation as depicted by the map and ordinance-description.

The second objection relative to the description alleges that the description in the petition circumscribes a tract of land known as the Koonce Estate and this indicates the Koonce Estate is not a part of the annexation. It is true that the description in the petition does circumscribe the Koonce Estate, however the map attached to the petition eliminates the common boundary of the Koonce Estate and the other annexed area. The very fact that the Koonce Estate was described in the petition (even though it was circumscribed) indicates that it was to be a part of the annexed area. The map which is attached to the petition

eliminates any ambiguity. This discrepancy in the description is also a minor one and was properly disregarded by the lower court.

The final descriptive error alleged by the appellants which they feel should invalidate the annexation is that the petition fails to close by 1050 feet. The description in the petition directs a course along the north line of South Pymatuning Township to the east line of Clarksville. Actually the north boundary of South Pymatuning Township intersects the northern boundary of Clarksville at a point which is 1050 feet west of the northeast corner of the Borough of Clarksville. The actual description as contained in the petition is as follows: "Westwardly along the north line of South Pymatuning Township to the east line of the present Borough of Clarksville." Admittedly in traveling to the east line of Clarksville you would travel in a general westwardly direction until you come to the northern boundary of Clarksville then you would travel in an easterly direction for 1050 feet to the east line of Clarksville. It is the opinion of this Court that if you follow the general description above quoted you would make a *continuous* line along the northerly boundary of South Pymatuning Township to the east line of the Borough of Clarksville (even though you would travel in an easterly direction for the last 1050 feet of the directed course). The obvious intent of the parties is expressed by the description in the petition and again doubt or ambiguity is eliminated by the map that was attached to the petition. Assuming, arguendo, that this does create a discrepancy, it is still a minor discrepancy and should be disregarded. It is the opinion of this Court that the description in petition even without the map fixes the boundary with reasonable certainty.

The determination by the lower court that ". . . the petition, including the map attached to the petition,

clearly and specifically depicts the land proposed to be annexed." is substantiated by the testimony of Joseph Harris, a civil engineer, who prepared the map.

In view of this testimony and the reasoning set forth above we feel that the findings of the lower court are supported by adequate evidence and legal principle. The lower court is well acquainted with the circumstances surrounding the case and had the opportunity to evaluate the credibility of the testimony; therefore we should not, in these circumstances, substitute our discretion for that of the court below.

The appellants' second broad objection is that the lower court erred in finding that the annexation was proper as being in the public interest. The appellants contend that the lower court failed to consider such matters as the irregularity of the western boundary; the comparative size of the annexed and annexing areas; the borough's motive in enlarging its area; the present inadequate plans for the new area; the difficulty in expanding the lighting facilities; the hardship and disadvantages to the remaining township and the apparent lack of any advantage to the residents of the annexed area.

Specifically, the appellants' objection to the creation of an irregular western boundary is—"The drawing of lines in an irregular manner so as to eliminate freeholders who oppose annexation reflects unfavorably upon the propriety of the annexation:" This irregularity of the boundary is actually a creature of our legislative annexation procedure, since the annexation must be instituted by petition of a majority of the freeholders. The boundaries of the land owned by the petitioning freeholders largely determines the irregularity of the new borough boundary. Any requirement on the regularity of the boundary or symmetry of the proposed borough should come from the legislature rather than this Court.

Another of the appellants' objections which should be directed to the legislature rather than to this Court is that the comparative size of the old borough to the new borough argues against its propriety. The appellants imply that a borough should not be permitted to annex an area that is larger (population and geographically) than the borough. This limitation should be made by the legislature and not by the courts.

In considering the balance of the appellants' objections we must be mindful of the fact that the majority of the freeholders are requesting this change of governmental status; that annexation, in most instances, is a necessity caused by municipalities' increasing need for more area to carry on their expanding governmental service and man's increasing desire for additional governmental services. For these reasons, this Court will not invalidate an annexation "unless cogent reasons appear in the record." The precedent which guides us to this decision is set forth in the *Lancaster Annexation Case*, 183 Pa. Superior Ct. 618, 624, 625, 132 A. 2d 743 (1957) : "In Irwin Borough Annexation Case, supra, we approved the following statement by Judge McWherter in his dissenting opinion in the lower court: ' "Here we are confronted with the question of the propriety of the physical annexation of the territory proposed to be annexed to the Borough of Irwin. A majority of the citizens of the territory proposed to be annexed have signed the petition. Council for the Borough of Irwin has approved the petition for annexation. It is not the province of this Court to set aside the will of the petitioners and the Borough unless cogent reasons appear in the record." '

"In Pleasant Hills Borough Incorporation Case, 161 Pa. Superior Ct. 259, 264, 53 A. 2d 882, this Court, in considering the rights of incorporation of a borough from a township, said: ' "In any view, the disadvantages to the township supply no good reason for deny-

ing the right of incorporation as a borough to residents seeking to attain an efficient local self-government suitable to their needs. The law never intended to protect a township in maintaining its boundaries intact at the expense of a town within its borders." '

"In Lancaster City Annexation Case (No. 1), 374 Pa. 529, 533, 98 A. 2d 25, our Supreme Court said: 'This Court, in that case, . . . speaking through Mr. Justice WILLIAMS, expounded quite interestingly the principle that annexation is an intrinsic right and duty imposed upon municipal corporations, by the very exigencies of social progress and governmental orderliness: . . .' "

In view of the public hearings held by the lower court (at which none of the freeholders in the annexed area appeared to voice any objections), the appointment and recommendation of the fact finding commission and the lower court's personal knowledge of the local condition we feel that the lower court's determination of public interest must be affirmed.

The appellants have not met their burden of showing a manifest abuse of discretion. This burden and the position of the court of quarter session in a role such as this was expressed in the *Irwin Borough Annexation Case (No. 1)*, 165 Pa. Superior Ct. 119, 133, 67 A. 2d 757 (1949) : "The quarter sessions courts have for two centuries been the repository of general supervisory and administrative power in relation to a large variety of local interests and affairs. They possess knowledge of local conditions which no appellate court can possibly know, and, in the absence of a manifest abuse of discretion we must assume that they act upon reasons which have genuine relation to the local situation."

The lower court's finding of fact that the annexation was in the public interest is fully supported by the evidence.

The order of the lower court is affirmed.