## Pennsylvania Builders Association v.
## Carroll Valley Borough

*Loudon L. Campbell,* for petitioners.
*Thomas Campbell,* for respondent.

GEORGE, *J.,* October 14, 2005—This matter comes before the court on a petition for review of the decision of the Pennsylvania Secretary of Labor and Industry. The petitioners, Pennsylvania Builders Association, Builders Association of Adams County, Terry Stem d/b/a TLS Carpentry, Dannie W. Holsinger and Ann M. Holsinger and SHC Inc. (the Builders), ask this court to overturn the decision of the Secretary of Labor upholding the validity of ordinance no. 2-2004 (relating to fire flow requirements and residential sprinklers) enacted by Carroll Valley Borough, Adams County, Pennsylvania, on September 14, 2004.

Carroll Valley Ordinance no. 02-2004 essentially requires that new residential construction in the borough

include the installation of automatic sprinkler systems and water flow alarms. Carroll Valley cites the Pennsylvania Construction Code Act (the Act), 35 P.S. §7210.101 et seq, as authority.[1] The Act was created by the legislature, inter alia, to provide uniform construction standards and regulations throughout the Commonwealth. The Act authorizes the Department of Labor and Industry to adopt uniform regulations applicable to the construction, alteration, repair and occupancy of all buildings.[2] Once regulations are adopted by the Department of Labor, those regulations preempt local legislation and effectively repeal and rescind any statute or local ordinance affecting new construction. 35 P.S. §7210.104(d). However, municipal building code ordinances, effective July 1, 1999, that are equivalent to or exceed the regulations promulgated under the Act shall remain in effect until such time as the provisions fail to equal or exceed those minimum requirements. 35 P.S. §7210.303(b). Municipalities may enact ordinances after the effective date of the Act provided that the requirements of the ordinances are equivalent to or exceed the minimum requirements promulgated under the Act. 35 P.S. §7210.503. Such ordinances, however, are subject to review by the Department of Labor to confirm their compliance with the

---

1. Although enacted as Act 45 of 1999, the legislation provided that the provisions of the Act, which are relevant to this proceeding, take effect 90 days following the publication of notice, in the *Pennsylvania Bulletin,* that the regulations required by the Act have been finally adopted. The regulations were adopted on January 10, 2004, and published at 34 Pa.B. 319 effective April 9, 2004.

2. The Act lists a number of exceptions that are not relevant to the inquiry before the court. See 35 P.S. §7210.104(b).

Act's minimum requirements. *Id.* Regardless of whether the ordinance meets or exceeds the minimum requirements of the Act, any aggrieved party may file a challenge with the Department challenging the propriety of the local ordinance in light of the provisions of the Act. 35 P.S. §7210.503(j).

On October 13, 2004, the petitioners filed a challenge pursuant to section 7210.503(j) with the Department of Labor and Industry. After a hearing, the Secretary of the Department of Labor and Industry issued an adjudication and order upholding the validity of Carroll Valley Ordinance no. 02-2004. The Builders have filed a timely appeal with this court. Review by this court is appropriate pursuant to 42 Pa.C.S. §933(a)(3) (relating to appeals from government agencies) and 35 P.S. §7210.504 (relating to appeals under the Construction Code Act).

When reviewing an appeal from an agency decision, the trial court is effectively functioning as an appellate court. See *e.g., City of Pittsburgh v. Kisner,* 746 A.2d 661, 666 (Pa. Commw. 2000). Where a full and complete record is made of the agency proceedings, the role of a trial court in exercising its appellate function is limited to determining whether the agency's findings are supported by substantial evidence, whether the proceeding was conducted in compliance with the procedural provisions of local agency law, whether an error of law was committed, or whether constitutional rights were violated. *Gilotty v. Township of Moon,* 846 A.2d 195, 198 (Pa. Commw. 2004) (citing *City of Pittsburgh,* cited above).

The cornerstone of the Builders' challenge rests upon the statutory construction of section 503(j)(2) of the Act. That section provides:

"(2) The department shall review any ordinance which would equal or exceed the minimum requirements of the Uniform Construction Code based on the following standards:

"(i) that certain clear and convincing local climatic, geologic, topographic or public health and safety circumstances or conditions justify the exception;

"(ii) the exception shall be adequate for the purpose intended and shall meet a standard of performance equal to or greater than that prescribed by the Uniform Construction Code;

"(iii) the exception would not diminish or threaten the health, safety and welfare of the public; and

"(iv) the exception would not be inconsistent with the legislative findings and purpose described in section 102."[3] 35 P.S. §7210.503(j)(2).

Although the Builders concede that the ordinance is in compliance with subparagraphs (2)(ii) and (2)(iii), they argue that the ordinance violates subparagraphs (2)(i) and (2)(iv). As such, the Builders suggest that the Secretary committed both an error of law and an abuse of discretion in upholding the validity of the ordinance. Specifically, the Builders claim that the Secretary committed an error of law in interpreting the meaning of "local" under subparagraph (2)(i).

---

3. 35 P.S. §7210.102.

Although the Secretary did not specifically address issues related to the statutory construction of the legislature's use of the word "local," a fair reading of the decision reveals that the Secretary rejected the Builders' argument that the use of the word "local" required a showing of conditions "confined to a particular place" and "non-existent elsewhere." The Builders suggest that this interpretation constituted an error of law. They read the statutory language as requiring a showing that the conditions at issue are confined to a municipality and not widespread or general across the state. In support of their argument, they suggest that the subsections of the legislation must be read in pari materi with each other. When doing so, they conclude that the legislative findings and purpose as described in section 102[4] require a restrictive application of the word "local."

Since the resolution of the issues raised by the Builders requires the interpretation of the meaning of the word "local," I will begin my analysis by applying the Rules of Statutory Construction. The objective of statutory construction is to determine the legislative intent. *Council of Middletown Twp. v. Benham,* 514 Pa. 176, 185, 523 A.2d 311, 315 (1987). When the language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning. 1 Pa.C.S. §1921(b); *The Philadelphia Eagles Football Club Inc. v. City of Philadelphia,* 573 Pa. 189, 216, 823 A.2d 108, 127 (2003). Similarly, non-technical words and phrases, which are not defined, should be interpreted according to their ordinary usage. *Commonwealth v. Kelley,* 569 Pa. 179, 186, 801 A.2d 551, 555 (2002). Historically,

---

4. 35 P.S. §7210.102.

the courts of this Commonwealth generally use dictionaries as source material to determine the common and approved usage of terms. *Fogle v. Malvern Courts Inc.,* 554 Pa. 633, 637, 722 A.2d 680, 682 (1999); *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988).

Interestingly, both parties in their briefs have cited respective dictionary definitions to support their arguments. The Builders suggest that the legislature's use of the word "local" was intended to require exclusive features in a municipality which are not apparent elsewhere in the state. On the other hand, the borough suggests that "local" refers only to conditions which pertain to a particular area or place. An independent review of Webster's Third New International Dictionary (unabridged), 1993, reveals that each cites a different sense of the meaning of "local" as segregated in the dictionary entry:

"*local* 1: characterized by or relating to a position in space: having a definite spatial form or location . . . 2: characterized by, relating to, or occupying a particular place: characteristic of or confined to a particular place: not general or widespread" Webster's Third New International Dictionary, 1993 (unabridged).

I find the Builders' interpretation to be overly restrictive. A plain reading of the statutory language does not require that the local conditions be unique. Rather, common sense suggests that the exception is justified where there are clear and convincing climatic, geologic, topographic, or public health and safety circumstances relating to a particular place.[5]

---

5. The Builders' interpretation that this section requires "exclusive" climatic, geological, topographical, or public health and safety cir-

Reading the statute in pari materi does not lead to a different result. Undoubtedly, section 503(j)(2)(iv)[6] requires that legislation that exceeds the minimum requirements of the Act be consistent with the legislative findings and purpose. This provision, however, does not necessarily lead to a conclusion espousing a restrictive interpretation of the term "local." The Act is intended not only to encourage uniformity in construction, but also to provide for the protection of life, health, property and environment and for the safety and welfare of the general public and occupants of buildings and structures. 35 P.S. §7210.102(b)(1). In this regard, the Act sets the minimum standards for construction with specific provisions permitting additional regulation where the needs of a

---

cumstances leads to an absurd result. For instance, it is difficult to imagine a climatic condition applicable to a municipality in Pennsylvania to the exclusion of any other municipality in the state. Similarly, while the geology throughout Pennsylvania may differ from region to region, geological conditions throughout the state are not defined by the borders of a municipality. The same can be said for the topography throughout the state. The Builders' argument that the word "local" was meant to require proof of conditions that are confined to a municipality, see the Builders' brief, page 7, would essentially lead to the absurd result of no municipality in Pennsylvania being able to establish local climatic, geologic, or topographic conditions justifying the exception. Obviously, the General Assembly did not institute a legislative scheme that is impossible to execute. 1 Pa.C.S. §1922. Yet, the legislature clearly chose to include such conditions as a basis for the exception. Thus, this language is not mere surplusage but rather exists as unambiguous evidence of the legislature's intent. See generally, *Keystone Aerial Surveys Inc. v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 777 A.2d 84, 90 (Pa. Super. 2001), *re-argument denied, app. granted*, 568 Pa. 701, 796 A.2d 983 (2002), *affirmed*, 574 Pa. 147, 829 A.2d 297 (2003).

6. 35 P.S. §7210.503(j)(2)(iv).

particular municipality justify the same. Certainly, the Act attempts to eliminate unnecessary expenses and restrictive regulations which are obsolete, conflicting or duplicative. 35 P.S. §7210.102(b)(4). Nonetheless, reading the legislation in its entirety reveals a legislative scheme aimed at setting minimum standards in construction, which may be exceeded where a municipality has particular needs that justify additional regulations. Reading the legislation in pari materi, I find nothing that leads to the conclusion advocated by the Builders. To the contrary, acceptance of the Builders' argument would, in effect, disregard the clear language of the legislation under the pretext of pursuing its spirit in violation of the instruction from our appellate courts. See generally, *Ramich v. W.C.A.B. (Schatz Electric Inc.),* 564 Pa. 656, 662, 770 A.2d 318, 332 (2001). Accordingly, I find no error of law in the Secretary's interpretation and application of the provisions of the Act.

The Builders further argue that the Secretary committed an abuse of discretion in that the record lacks substantial evidence supporting the Secretary's findings. Substantial evidence has been defined as such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jordan v. W.C.A.B. (Consolidated Electrical Distributors),* 550 Pa. 232, 235, 704 A.2d 1063, 1064 (1997) (quoting *Bethenergy Mines Inc. v. W.C.A.B. (Skirpan),* 531 Pa. 287, 292, 612 A.2d 434, 436 (1992)). In addressing this issue, I am also mindful of our appellate direction that a reviewing court may not substitute its judgment for that of an agency since the fact-finding agency is in a better position to determine the facts based upon its observation of the testimony and

witnesses. *Moorehead v. Civil Service Commission of Allegheny County,* 769 A.2d 1233, 1238 (Pa. Commw. 2001).

Following a hearing held on January 11, 2005, the Secretary issued detailed findings of fact which included 66 different findings. Although the findings of fact are too numerous to specifically set forth, they may be summarized as follows:

"Carroll Valley consists of two geological provinces, one part consisting of the lowland valley and the other part consisting of a rugged and mountainous terrain extending to an elevation of 2,200 feet, or approximately 90 feet higher than the lowland area. Over 53 percent of the topography of the borough is situate on a 12-degree slope or greater with some sections of the borough having a slope as great as 70 or 80 degrees. The geological formations of the borough are not conducive to supporting a large number of onsite wells. The borough covers an area of approximately 5 1/2 square miles with over 70 miles of roads. Approximately 90 percent of the borough is residential and currently there are approximately 430 homes within its limits, only 1/3 of which are on the valley floor. However, only 1/3 of the land within the borough is developed with residential construction.

"The borough does not have either a municipal or a volunteer fire department. Rather, the closest responding fire department is the volunteer fire department in Fairfield Borough, which is approximately two miles from that portion of Carroll Valley located on the valley floor. There is no public water supply in Carroll Valley Borough and, consequently, no fire hydrants within the borough. There are, however, five dry hydrants on the

valley floor where three lakes provide water to fill or re-fill fire fighting tanker trucks' needs. Due to the difficult topography of Carroll Valley Borough, in some areas of the borough, loaded tanker trucks can only reach top speeds of around five miles an hour. The difficulty in getting water to the fire scene is multiplied since water tankers, once they have exhausted their supply, must travel to the valley floor to re-fill before negotiating the difficult terrain and returning to the fire scene. There have been instances where the Fairfield Fire Company's drivers have had to divert off a route because of the terrain and attempt to find an alternative route because the terrain was too steep. One of the primary challenges that the Fairfield Fire Company faces in fighting fires in Carroll Valley is getting water to the scene.

"Most building lots in Carroll Valley are approximately 100' x 200'. Because of the lot sizes in the borough, there is less than a 50-foot separation between residences. This lack of 'defensible space' coupled with the lack of sufficient water classifies the majority of Carroll Valley Borough as a 'high hazard area' under the Urban Wildlife Interface Code.

"The ordinance at issue requires sprinkler systems installed on all new construction. Each home installed with a sprinkler system will require holding tanks to permit the continuous flow of water with pressure. For a 1,500 square foot home, the total cost for a sprinkler system will run less than $3,000." Adjudication and order, January 11, 2005.

Based upon this factual record, the Secretary concluded that clear and convincing evidence established that local

topographic and public health and safety circumstances justify the enactment of ordinance no. 02-2004. The Secretary further found that the ordinance provided standards for the protection of life, health and property through the use of state-of-the-art devices without unreasonably or unnecessarily increasing construction costs. Finally, the Secretary concluded that the ordinance was consistent with the legislative findings and purpose as set forth in the Act.[7]

My review of the record reveals substantial evidence which amply supports the Secretary's findings. Additionally, I find no error with the Secretary's conclusion concerning the ramifications and risks which local topographic conditions present to public safety. As amply stated by the Secretary:

"The borough has real public health and safety concerns with its ability to protect the lives of its residents in the event of a fire. The majority of the borough . . . is residential. Over 2/3 of the homes situate in the borough are located in the mountainous areas, with less than 1/3 of the current residential development located on the valley floor. Add to a topography of hills, mountains and valleys many roads which are impassable, no public water

---

7. In a discussion accompanying the decision, the Secretary found the record to be devoid of evidence suggesting that the ordinance is inconsistent with the legislative findings and purpose of the Act. January 11, 2005 adjudication and order, p. 16. The Builders have not directed this court's attention to anything in the record which would contradict this finding by the Secretary. Rather, it appears that the Builders' argument rises or falls entirely on principles of statutory construction.

supply, no fire hydrants, no municipal fire company and no volunteer fire company, and the risk of fire-related harm or death to residents in the borough in the event of a residential fire is substantial.

"There can be no question that in a majority of circumstances, smoke alarms as required by the [International Residential Code] are a sufficient measure to protect against fire damage, both in terms of life and property. But that presupposes that the fire, once detected, will be responded to quickly by local firefighters. In Carroll Valley, there are no local firefighters. There are no fire hydrants. There is no public water supply. The borough has to rely on the services of fire departments in surrounding communities, the closest of which is approximately two miles from the valley floor at the base of the mountain, and all water from hydrants, also located on the valley floor, to fight its fires." Adjudication and order, January 11, 2005, pp. 16-17.

The Builders suggest that the evidence relied upon by the Secretary establishes nothing more than "mere inconveniences and difficulties to be overcome in delivering fire response and protection that are not unlike those that exist in the municipalities throughout Pennsylvania." Brief of petitioners, p. 13. I do not agree. Initially, I note there is nothing in the record to suggest such a conclusion. Regardless, whether a municipality or other municipalities have similar features or needs is immaterial. As noted above, the critical inquiry is whether the climatic, geological and topographical circumstances of Carroll Valley justify the additional regulations for the protection of the health, welfare and safety of the community.

Similarly, I reject the Builders' argument that ordinance no. 02-2004 is overly broad. In this regard, the Builders suggest that if a need for water sprinklers is present, it is present only in those areas of the borough other than the valley floor. The Builders argue, therefore, that the ordinance is overbroad in its application in that clear and convincing evidence has failed to justify universal requirement for sprinklers throughout the borough. This argument ignores the Secretary's findings.

The Secretary's findings, which are supported by the record, indicate that over half of the topography in the Borough consists of mountainous areas. Moreover, less than 1/3 of the current residential development is located on the valley floor, opposed to on the mountain. There is nothing in the record to suggest that this trend will not continue in future building. Rather, this evidence is circumstantial evidence that the vast majority of future building will likely occur in areas other than the valley floor. See generally, *Brown Transport Corp. v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission,* 133 Pa. Commw. 545, 578 A.2d 555 (1990) (a finding of substantial evidence may be supported by circumstantial or inferential evidence). Moreover, this evidence is more than adequate to support the Secretary's conclusion.

In rejecting the Builders' argument concerning the scope of ordinance no. 02-2004, I note that it is neither the right nor obligation of the Secretary, or this court, to act as a super-legislator. An ordinance adopted by a legislative body is presumably legal. *In re Annexation of Portion of South Pymatuning Twp.,* 409 Pa. 324, 329, 186 A.2d 13, 15 (1962). Rather, this court has a duty to

determine whether the record contains substantial evidence supporting the Secretary's determinations. *City of Pittsburgh v. Kisner,* cited above. Having found such substantial evidence, I will not delve into house by house inquiry as to the need for sprinkler systems in each of the thousands of remaining potential future residences in Carroll Valley. The Act does not require such an assessment. In fact, the Builders' suggestion, to slice Carroll Valley into areas where different regulations apply, only frustrates the uniformity which the Act attempts to establish. Absent clear legislative direction, this court will not usurp the Act's plain language permitting additional regulations on a municipal-wide basis. For the foregoing reasons, the decision of the Secretary is affirmed.

### ORDER

And now, October 14, 2005, the appeal of the petitioners is denied. The decision of the Pennsylvania Secretary of Labor and Industry is affirmed.