7 A.3d 249

SCHUYLKILL TOWNSHIP, Appellant

v.

PENNSYLVANIA BUILDERS ASSOCIATION, Home Builders
Association of Chester and Delaware Counties, The
Basile Corporation and SHC, Inc., Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 22, 2008.

Decided Oct. 19, 2010.

Jordan Berson Yeager, Esq., Curtin & Heefner, L.L.P., Doylestown, for Schuylkill Township.

Stephen J. Dzuranin, Esq., Thomas L. Wenger, Esq., Wix, Wenger & Weidner, P.C., Harrisburg, Jeffrey Concini Clark, Esq., for Amicus Curiae Pennsylvania State Association of Township Supervisors.

Loudon L. Campbell, Esq., Eckert Seamans Cherin & Mellott, LLC, Harrisburg, for PA Builders Assoc., Home Builders Assoc. of Chester & Delaware Ctys., The Basile Corp. & SHC.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

### OPINION

Justice EAKIN.

Schuylkill Township appeals the Commonwealth Court's order affirming a Department of Labor and Industry adjudication invalidating the Township's sprinkler ordinance; the Ordinance required standards beyond the minimum requirements of the Uniform Construction Code (UCC), and that court found no local circumstances or conditions exist in the Township justifying such an exception. We affirm.

The Pennsylvania Construction Code Act (PCCA), 35 P.S. § 7210.101 *et seq.*, stresses uniformity: "[t]he way to insure uniform, modern construction standards and regulations throughout this Commonwealth is to adopt a Uniform Construction Code." *Id.,* § 7210.102(a)(3). Section 301 of the PCCA granted the Department of Labor and Industry authority to promulgate uniform statewide construction standards,

*id.*, § 7210.301(a)(1), which it did by adopting the UCC in April, 2004. 34 Pa.Code § 401.1 *et seq.*; *Allegheny Inspection Service, Inc. v. North Union Township*, 600 Pa. 245, 964 A.2d 878, 881 (2009). "[T]he provisions of the [UCC] . . . preempt and rescind construction standards provided by a statute, local ordinance or regulation. The rescission or preemption does not apply to ordinances in effect on July 1, 1999. . . ." 34 Pa.Code § 403.2(a). Ordinances enacted after the effective date which require more than ("exceed") the UCC's minimum requirements are subject to review by the Department of Labor and Industry pursuant to 35 P.S. § 7210.503(j).

Schuylkill Township enacted Ordinance 2005–01, requiring sprinklers in all new structures or dwellings, including basements, additions, and structural alterations. Ordinance 2005–01 provides, in relevant part:

> *Section 1 Fire Suppression Systems*—As set out herein, a fully operational automatic fire suppression system . . . is hereby required:
>
> A.  All new construction of a structure or dwelling . . . shall be equipped with a fully operational automatic Fire Suppression System. . . .
>
> B.  All new addition(s) or structural alteration(s) . . . representing 1,000 square feet or more of gross floor area . . . shall be equipped with a fully operational Fire Suppression System throughout the existing structure and any new addition(s). Additions or alterations to an existing sprinklered structure shall be sprinklered no matter the square footage of the addition or alteration.
>
> C.  Fire Suppression System[s] shall be required throughout basements of newly constructed buildings.

*Id.* The Ordinance applies to structures or dwellings as defined in the Schuylkill Township Zoning Ordinance of 1955.[1]

---

1.  The Township's Zoning Ordinance is not in the record. The Secretary of the Department of Labor and Industry included the Township's definition of a "structure" in its findings of fact:

> Any form or arrangement of building materials on or in the water or land for providing proper support, bracing, anchoring or other protection against the forces of the elements, but not including fences.

It is undisputed Ordinance 2005–01's sprinkler mandate exceeds the UCC because the UCC did not require sprinklers.[2] An ordinance exceeding the UCC must meet all four standards set forth in § 7210.503(j)(2) to be valid:

> (2) The [Department of Labor and Industry] shall review any ordinance which would equal or exceed the minimum requirements of the [UCC] based on the following standards:
>
>> (i) that certain clear and convincing local climatic, geologic, topographic or public health and safety circumstances or conditions justify the exception;
>>
>> (ii) the exception shall be adequate for the purpose intended and shall meet a standard of performance equal to or greater than that prescribed by the Uniform Construction Code;
>>
>> (iii) the exception would not diminish or threaten the health, safety and welfare of the public; and
>>
>> (iv) the exception would not be inconsistent with the legislative findings and purpose described in section 102.

35 P.S. § 7210.503(j)(2). In the present case, the only disputed standard is § 7210.503(j)(2)(i).

> Anything constructed or erected on the ground or attached to the ground including but not limited to buildings, sheds, manufactured or mobile homes or other similar items.
>
> Department of Labor and Industry Adjudication and Order, 11/15/05, at 4 (citing N.T. Department of Labor and Industry Hearing, 10/20/05, 287–88).

**2.** We note the 2009 UCC incorporated International Code Council provisions requiring sprinklers in newly-constructed townhomes and single and two-family homes by 2011. *See* 39 Pa.B. 7196 (adopting 2009 International Code Council's International Residential Code as UCC); 2009 International Residential Code for One- and Two–Family Dwellings, § R313. The Pennsylvania Builders Association, *inter alia*, sought a preliminary injunction to enjoin the Department's enforcement of regulations promulgated at 39 Pa.B. 7196, which the Commonwealth Court denied. *Pennsylvania Builders Association v. Department of Labor and Industry*, No. 27 M.D.2010, unpublished memorandum at 10 (Pa.Cmwlth. filed March 10, 2010). The parties have not alleged, nor do we believe, the pending matter moots the present appeal because Ordinance 2005–01's mandate appears substantially broader than the 2009 UCC sprinkler provision.

In April, 2005, appellees challenged the Ordinance on the basis it exceeded the UCC. At the Department of Labor and Industry hearing, the Township argued local conditions or circumstances warranted the Ordinance's sprinkler mandate and thus justified an exception to the UCC pursuant to § 7210.503(j)(2)(i). The local conditions it named were: population growth, which places a strain on its volunteer fire department; mountainous topography and traffic congestion, which delays firefighter response time; and modern construction, which utilizes rapidly-burning wooden trusses.

The Secretary of the Department of Labor and Industry found the volunteer fire department had, at that time, 40 active members, and a second fire station was under construction. He indicated the fire department responded to 292 calls in 2004, and less than ten responses were to family homes. The Secretary noted all new subdivisions or land development plans in the Township were required to have fire hydrants served by a public water supply. Further, the fire department determined where to place the hydrants and visited each new development to oversee hydrant installation. The Secretary acknowledged the Township was dependent on a volunteer fire department while concurrently dealing with population growth and increased traffic congestion; however, none of the Township's evidence suggested the traffic congestion caused a significant impediment to firefighter response. Topographical evidence indicated no roadways had an incline of greater than 25%. The Secretary opined "these conditions are not atypical[,]" and "standing alone, do not justify an exception to the general rule of uniformity." Department of Labor and Industry Adjudication and Order, 11/15/05, at 19. He concluded: "The Township has failed to establish *clear and convincing* local climatic, geologic, topographic or public health and safety circumstances and conditions in the Township to justify the enactment of Ordinance 2005–01." *Id.*, at 9 (emphasis in original). Thus, the Secretary invalidated Ordinance 2005–01.

The Township appealed to the trial court, arguing 35 P.S. § 7210.503(j)(2)(i) merely required proof that local conditions, not atypical conditions, justified a UCC exception, and the

Secretary committed an error of law and abused his discretion in invalidating Ordinance 2005–01. The trial court sustained the Secretary's order, determining he did not interject "the requirement of a finding of a local condition not widespread or generally found in the Commonwealth" into § 7210.503(j)(2)(i). Trial Court Opinion, 8/29/06, at 8. Instead, it found "the Secretary's statement was one further factual finding made immediately prior to issuing his holding in the case." *Id.*, at 6. The trial court reasoned "the term 'local' must be interpreted to mean that some circumstance or condition that is not widespread or generally found in the Commonwealth can be shown to exist within a municipality to justify an exception to the standards set forth in the UCC." *Id.*, at 7–8.

The Township appealed to the Commonwealth Court, which affirmed. The Commonwealth Court agreed with the trial court the Secretary's use of the phrase "not atypical" was not a legal conclusion. *Schuylkill Township v. Pennsylvania Builders Association*, 935 A.2d 575, 581 (Pa.Cmwlth.2007). Nevertheless, the court found equating "local" with "atypical" was not erroneous, pursuant to the rules of statutory construction, as the PCCA does not define "local," and the dictionary definition offers two meanings: "relating to position in space[,]" or "not general or widespread." *Id.*, at 581–82 (citing Webster's Third New International Dictionary 1327 (2002)). The Commonwealth Court found "[t]he Secretary's reasoning draws upon both definitions." *Id.*, at 582. Thus, it rejected the Township's assertion "atypicality" should play no role in the Secretary's adjudication. *Id.* It held the Secretary "simply required the Township to show that conditions there were so different from the statewide norm that the uniform standards were not appropriate to use in the Township." *Id.*, at 583. Furthermore, it held substantial evidence supported the Secretary's invalidation of Ordinance 2005–01.

The Township petitioned for allowance of appeal. We accepted review to determine:

   a. Whether Section 503 of the [PCCA], 35 P.S. § 7210.503(j)(2), requires a municipality to prove that

there are unusual local circumstances or conditions atypical of other municipalities that would justify an ordinance which departs from the construction standards mandated by the [UCC]?

b. Whether the Commonwealth Court, in establishing a new standard on an issue of first impression, should have provided the Township with an opportunity to satisfy that standard?

*Schuylkill Township v. Pennsylvania Builders Association,* 596 Pa. 586, 947 A.2d 714 (2008) (table). "The standard of review when determining the validity of an agency adjudication is whether there has been an error of law, whether constitutional rights have been violated, or whether the agency's factual findings are supported by substantial evidence." *Insurance Federation of Pennsylvania, Inc. v. Commonwealth, Department of Insurance,* 585 Pa. 630, 889 A.2d 550, 553 (2005) (citing 2 Pa.C.S. § 704).[3]

Because the question of statutory interpretation arose in the administrative agency context, we are not presented with a pure question of law. Rather, the issue presents a mixed question of law and fact. We must determine whether the Department of Labor and Industry reached the proper legal adjudication in applying a statutory standard to particular facts. Because this case concerns what a municipality must prove to satisfy 35 P.S. § 7210.503(j)(2)(i), in light of the PCCA's failure to define the adjective "local," the outcome is factually driven.

3. Section 704 provides:
The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).
2 Pa.C.S. § 704.

■ This Court gives substantial deference to an agency's interpretation of a statute the agency "is charged with implementing and enforcing[.]" *Commonwealth, Office of Administration v. Pennsylvania Labor Relations Board*, 591 Pa. 176, 916 A.2d 541, 549 n. 11 (2007) (citation omitted); *see also Cherry v. Pennsylvania Higher Education Assistance Agency*, 537 Pa. 186, 642 A.2d 463, 464 (1994) ("An interpretation by the agency charged with a statute's implementation is accorded great weight and will be overturned only if such a construction is clearly erroneous."). The Department of Labor and Industry is the agency charged with enforcing the UCC. *See* 35 P.S. §§ 7210.105(a), 7210.301(a), 7210.503(j). Deference is especially proper here, where the Department's review of the application of § 7210.503(j)(2)'s statutory standard is factually driven and occurs on a case-by-case basis. *See Commonwealth v. Crawley*, 592 Pa. 222, 924 A.2d 612, 615–16 (2007) ("[S]ome mixed questions are more heavily weighted toward fact, while others are more heavily weighted towards law. The more fact intensive a determination is, the more deference a reviewing court should give the conclusion below.") (citation omitted).

The Township looks to *Pennsylvania Builders Association v. Carroll Valley Borough*, 76 Pa. D. & C.4th 390 (Adams Cty.2005), which validated a sprinkler ordinance and did not require that the local conditions be unique. It argues there is no substantial evidence to support the Secretary's finding, and contends it should be afforded an opportunity to satisfy the "new" standard via a new hearing. Appellees argue it is the Township's burden to show, with clear and convincing evidence, that local conditions are sufficient to satisfy § 7210.503(j)(2)(i), and the Secretary's conclusion was not dependent on whether conditions are "uniquely" local. It contends reliance on *Carroll Valley Borough* is misplaced, as the facts are distinguishable.

■ The PCCA led to the adoption of *uniform* standards for Pennsylvania's 2,566 municipalities. The concepts of uniformity and public health are underlying principles of the UCC, and the conditions of Marcus Hook and Carroll Valley

Borough, two municipalities which so far have successfully enacted sprinkler ordinances, exemplify the types of local conditions justifying a UCC exception. The burden of proving local circumstances and conditions justifying a UCC exception is high, as illustrated in Marcus Hook and Carroll Valley Borough.

At the Labor and Industry hearing regarding this matter, a representative from the Pennsylvania Builders Association, an appellee herein, described Marcus Hook as a municipality of 1.1 square miles with the world's largest propane storage tank underlying it and oil pipelines passing through it. *Schuylkill Township,* at 582; N.T. Department of Labor and Industry Hearing, 10/20/05, at 340–41. Marcus Hook enacted an ordinance requiring automatic sprinklers in all residences, with the exception of single-family homes. The Association did not challenge the ordinance because it believed Marcus Hook had clear and convincing reasons for exceeding the UCC's requirements. *Schuylkill Township,* at 582; N.T. Department of Labor and Industry Hearing, 10/20/05, at 342.

Carroll Valley Borough is carved into the side of a mountain, has many impassable roads, no public water supply, no fire hydrants, and no volunteer fire department. It enacted a sprinkler ordinance, which the Association challenged. *Carroll Valley Borough,* at 399–400. The Secretary of the Department of Labor and Industry determined Carroll Valley Borough presented clear and convincing local topographic and public health circumstances to justify exceeding the UCC's requirements. *Id.,* at 400–01.

Although *Carroll Valley Borough* is not binding on this Court, we adopt the reasoning of the learned court, to the extent it provided:

> The Act is intended not only to encourage uniformity in construction, but also to provide for the protection of life, health, property and environment and for the safety and welfare of the general public and occupants of buildings and structures. In this regard, the Act sets the minimum standards for construction with specific provisions permit-

ting additional regulation where the needs of a particular municipality justify the same. Certainly, the Act attempts to eliminate unnecessary expenses and restrictive regulations which are obsolete, conflicting or duplicative. Nonetheless, reading the legislation in its entirety reveals a legislative scheme aimed at setting minimum standards in construction, which may be exceeded where a municipality has particular needs that justify additional regulations.

\* \* \*

■ [T]he critical inquiry is whether the climatic, geological and topographical circumstances of Carroll Valley justify the additional regulations for the protection of the health, welfare and safety of the community.

*Id.*, at 397–98, 402 (citations omitted). Beyond the examples of Marcus Hook and Carroll Valley Borough and consistent with the PCCA's purpose, uniformity and public health are underlying principles which must guide the question of whether an exception is warranted. *See* 35 P.S. § 7210.102(a)(2)-(4), (b)(8). The standards in 35 P.S. § 7210.503(j)(2) ensure any ordinance equaling or exceeding the UCC's minimum requirements nevertheless furthers these principles.

Here, the Commonwealth Court notably perceived: "[The Secretary] simply required the Township to show that conditions there were so different from the statewide norm that the uniform standards were not appropriate to use in the Township. This was an appropriate inquiry in determining whether local circumstances and conditions justify an exception." *Schuylkill Township*, at 583. Evidence showed adherence to the UCC would have been unsafe in Marcus Hook and Carroll Valley Borough, but the Township has failed to show the same potential risk here; it presented no clear and convincing evidence of local conditions jeopardizing public safety such as would justify an exception to the UCC. The Township offers the same evidence it presented to the Secretary, which the trial court and Commonwealth Court reviewed and held substantially supported the Secretary's factual findings.

Furthermore, we affirm the Commonwealth Court, which found the Secretary's reasoning drew upon both dictionary

definitions of the adjective "local." *Id.*, at 581–82. The first definition—"characterized by or relating to position in space: having a definite spatial form or location"—does not foreclose the possibility that a township's "local" circumstances or conditions may potentially satisfy the second definition—"characterized by, relating to, or occupying a particular place: characteristic of or confined to a particular place: not general or widespread." *Id.*, at 582 (quoting Webster's Third New International Dictionary 1327 (2002)). Local is not always synonymous with atypical, nor is atypicality required to satisfy § 7210.503(j)(2)(i).

■ One may look to municipalities which have successfully enacted sprinkler ordinances for examples of what local circumstances or conditions justify exceeding the UCC under § 7210.503(j)(2)(i); conversely, the local circumstances or conditions herein do not warrant a UCC exception. The Township's argument that the UCC was merely intended to set a floor, which municipalities may surpass when local conditions warrant it, is meritless. By adopting the UCC, the Legislature intended for uniformity to be the standard, not the exception. The Township's position conflicts with the UCC, and the facts here stand in great contrast to the facts which justified successful sprinkler ordinances.[4]

As the Secretary did not graft an "atypicality" requirement into the standard set forth in § 7210.503(j)(2)(i) when he reviewed Ordinance 2005–01's validity, the Township's second issue does not require further consideration. The order of the Commonwealth Court is affirmed. Jurisdiction relinquished.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE, and Justices SAYLOR, BAER, TODD, and McCAFFERY join the opinion.

4. In advocating for or against such an exception, parties to future litigation may also consider, but are not limited to, the following factors: the availability and adequacy of a municipality's fire department, typical fire response time and geologic and topographic impediments thereto, and available public water sources.